# Exhibit A

 CT Corporation

## Service of Process Transmittal
06/28/2016
CT Log Number 529415777

**TO:** Kelly Lewis
Electric Boat Corporation
75 Eastern Point Rd
Groton, CT 06340-4905

**RE:** **Process Served in Delaware**

**FOR:** Electric Boat Corporation  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Linda R. Bouley, Pltf. vs. CBS Corporation, etc., et al., Dfts. // To: Electric Boat Corporation |
| **DOCUMENT(S) SERVED:** | Summons, Order(s), Second Amended Complaint, Attachment(s) |
| **COURT/AGENCY:** | Middlesex County: Superior Court, NJ<br>Case # 155073 |
| **NATURE OF ACTION:** | Asbestos Litigation - Personal Injury |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Trust Company, Wilmington, DE |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 06/28/2016 postmarked on 06/29/2016 |
| **JURISDICTION SERVED :** | Delaware |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days after service, exclusive of the day of service |
| **ATTORNEY(S) / SENDER(S):** | Leah McMorris Carlsen<br>Thronton Law Firm LLP<br>100 Summer Street, 30 Floor<br>Boston, MA 02110<br>617-720-1333 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 06/29/2016, Expected Purge Date: 07/04/2016 |
| | Image SOP |
| | Email Notification,  Kelly Lewis  klewis2@gdeb.com |
| | Email Notification,  Dixie Baalman  dbaalman@gdeb.com |
| | Email Notification,  Susan Pecoraro  specorar@gdeb.com |
| | Email Notification,  Michael Askew  maskew@gdeb.com |
| **SIGNED:** | The Corporation Trust Company |
| **ADDRESS:** | 1209 N Orange St<br>Wilmington, DE 19801-1120 |
| **TELEPHONE:** | 302-658-7581 |

Page 1 of  1 / DL

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

, .C.
279 E. CENTRAL ST. #222
FRANKLIN, MA 02038

U.S. POSTAGE >> PITNEY BOWES



ZIP 02110   $ 008.62⁰
02 1W
0001382770

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS. FOLD AT DOTTED LINE

**CERTIFIED MAIL®**

7015 1520 0001 1075 6641

**Electric Boat Corporation**
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange St.
Wilmington, DE 19801

TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER

## COMMONWEALTH OF MASSACHUSETTS

......... MIDDLESEX ............. , ss

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No.
15-5073

LINDA R. BOULEY,
.......................................... , Plaintiff(s)

v.

CBS CORPORATION f/k/a VIACOM, INC., Successor by Merger to CBS
CORPORATION f/k/a WESTINGHOUSE ELECTRIC CORPORATION, et al,
Defendants

### SUMMONS

### ELECTRIC BOAT CORPORATION

To the above-named Defendant:

You are hereby summoned and required to serve upon ...Thornton Law Firm LLP..............................

.................................................... plaintiff's attorney, whose address is .........................................

100 Summer Street, 30th Fl., Boston, MA 02110......., an answer to the complaint which is herewith

served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you

fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also

required to file your answer to the complaint in the office of the Clerk of this court at ...................................

200 Trade Center, Woburn, MA 01801.......... either before service upon plaintiff's attorney or within a

reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may

have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's

claim or you will thereafter be barred from making such claim in any other action.

Witness, **Judith Fabricant**, Esquire, at .........................................................................

the .................24th.................................. day of .......June..................................................

...................., in the year of our Lord ......2016............................. .

*Tracking Order and 2nd Amended Complaint
Interrogatories & Pretrial Order No. 8

........................................
Clerk

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used
   for each defendant, each should be addressed to the particular defendant.

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

FORM NO. SUP. — 001

| **·CIVIL TRACKING ORDER**<br>(STANDING ORDER 1- 88) | DOCKET NUMBER<br>**1581CV05073** | **Trial Court of Massachusetts**<br>**The Superior Court** |
|---|---|---|

| ASE NAME:<br>Linda R Bouley vs. Rogers Corporation et al | Michael A. Sullivan, Clerk of Court<br>Middlesex County |
|---|---|

| TO: Jotham Kinder, Esq.<br>Thornton Law Firm LLP<br>100 Summer Street, 30th Floor<br>Boston, MA 02110 | COURT NAME & ADDRESS<br>Middlesex County Superior Court - Woburn<br>200 Trade Center<br>Woburn, MA 01801 |
|---|---|

### TRACKING ORDER - A - Average

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

| STAGES OF LITIGATION | DEADLINE | | |
|---|---|---|---|
| | SERVED BY | FILED BY | HEARD BY |
| Service of process made and return filed with the Court | | 10/15/2015 | |
| Response to the complaint filed (also see MRCP 12) | | 11/16/2015 | |
| All motions under MRCP 12, 19, and 20 | 11/14/2015 | 12/14/2015 | 01/13/2016 |
| All motions under MRCP 15 | 09/09/2016 | 10/11/2016 | 10/11/2016 |
| All discovery requests **and depositions** served and non-expert despositions completed | 07/06/2017 | | |
| All motions under MRCP 56 | 08/07/2017 | 09/04/2017 | |
| Final pre-trial conference held and/or firm trial date set | | | 01/02/2018 |
| Case shall be resolved and judgment shall issue by | | | 07/16/2018 |

The final pre-trial deadline is <u>not the scheduled date of the conference</u>. You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED<br>**07/17/2015** | ASSISTANT CLERK | PHONE |
|---|---|---|

Date/Time Printed: 07-17-2015 15:35:13                                                                 SCV026\ 11/2014

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX: ss.                                        SUPERIOR COURT
                                                      DEPARTMENT OF THE
                                                      TRIAL COURT

---

LINDA R. BOULEY,

                    Plaintiff,                        Civil Action
                                                      No.: 15-5073
v.
                                                      **SECOND AMENDED**
CBS CORPORATION f/k/a VIACOM, INC.,                   **COMPLAINT**
       Successor by Merger to
       CBS CORPORATION f/k/a                          **PLAINTIFF DEMANDS**
       WESTINGHOUSE ELECTRIC CORPORATION;             **A TRIAL BY JURY**
GENERAL ELECTRIC COMPANY;
ROGERS CORPORATION;
UNION CARBIDE CORPORATION;
INTERNATIONAL BUSINESS MACHINES CORPORATION;
CYTEC ENGINEERED MATERIALS INC. f/k/a CYTEC FIBERITE, INC.
       Successor in Interest to FIBERITE, INC.;
EATON CORPORATION, Individually and as Successor-in-Interest to
       EATON ELECTRICAL and CUTLER HAMMER, INC.;
HITCO CARBON COMPOSITES, INC.;
DUREZ PLASTICS AND CHEMICAL,
       Formerly a Division of OCCIDENTAL CHEMICAL CORPORATION;
PLASTICS ENGINEERING COMPANY;
ROCKWELL AUTOMATION, INC. Independently and as Successor in Interest to
       ALLAN BRADLEY and ROSTONE CORPORATION;
SCHNEIDER ELECTRIC USA INC. f/k/a SQUARE D COMPANY INC.; and
ELECTRIC BOAT CORPORATION;

                    Defendants.

---

Now comes the plaintiff, by her attorneys, and files the following complaint:

1.     PARTY PLAINTIFF

The plaintiff, Linda R. Bouley, a single person, resides at 51 Friendship Street, Newport,

Rhode Island 02840.

2.     PARTY DEFENDANTS

2A.    The defendant, CBS Corporation f/k/a Viacom, Inc., Successor by Merger to CBS

Corporation f/k/a Westinghouse Electric Corporation, is a foreign corporation having a principal

place of business located in the State of Pennsylvania and has conducted business in the

Commonwealth of Massachusetts.

2B.     The defendant, <u>General Electric Company</u>, is a New York corporation having a

principal place of business outside the Commonwealth of Massachusetts and has conducted

business in the Commonwealth of Massachusetts.

2C.     The defendant, <u>Rogers Corporation</u>, is a domestic corporation incorporated under

the laws of the Commonwealth of Massachusetts, having a principal place of business in the

Commonwealth of Massachusetts, and has conducted business in the Commonwealth of

Massachusetts.

2D.     The defendant, <u>Union Carbide Corporation</u>, is a Connecticut corporation with a

principal place of business outside the Commonwealth of Massachusetts and has conducted

business in the Commonwealth of Massachusetts.

2E.     The defendant, <u>International Business Machines,</u> is a foreign corporation,

incorporated under the laws of the State of New York, having a principal place of business in the

State of New York, and has conducted business in the Commonwealth of Massachusetts.

2F.     The defendant, <u>Cytec Engineered Materials Inc. f/k/a Cytec Fiberite, Inc.</u>

<u>Successor in Interest to Fiberite, Inc.</u>, is a foreign corporation incorporated under the laws of the

State of Delaware, having a principal place of business in the State of New Jersey and has

conducted business in the Commonwealth of Massachusetts.

2G.     The defendant, <u>Eaton Corporation, Individually and as Successor-in Interest to</u>

<u>Eaton Electrical and Cutler Hammer, Inc.</u>, is a foreign corporation, incorporated under the laws

of the State of Ohio, having a principal place of business in the State of Ohio, and has conducted

business in the Commonwealth of Massachusetts.

2H.     The defendant, Hitco Carbon Composites, Inc., is a foreign corporation, incorporated under the laws of the State of Delaware, having a principal place of business in the State of North Carolina, and has conducted business in the Commonwealth of Massachusetts.

2I.     The defendant, Durez Plastics and Chemical, Formerly a Division of Occidental Chemical Corporation, is a foreign corporation incorporated under the laws of the State of New York, having a principal place of business in the State of Texas, and has conducted business in the Commonwealth of Massachusetts.

2J.     The defendant, Plastics Engineering Company, is a foreign corporation, with a principal place of business in Sheboygan, Wisconsin which has conducted business in the Commonwealth of Massachusetts.

2K.     The defendant, Rockwell Automation, Inc. Independently and as Successor in Interest to Allan Bradley and Rostone Corporation, is a Delaware corporation with a principal place of business in the Commonwealth of Pennsylvania and has conducted business in the Commonwealth of Massachusetts.

2L.     The defendant, Schneider Electric USA Inc. f/k/a Square D Company Inc., is a Delaware corporation having a principal place of business in the State of Illinois and has conducted business in the Commonwealth of Massachusetts.

2M.     The defendant, Electric Boat Corporation, is a foreign corporation, incorporated under the laws of the State of Delaware, having a principal place of business in the State of Connecticut, and has conducted business in the Commonwealth of Massachusetts.

As used in this Complaint, the term "defendant" shall include any party defendants identified in paragraphs 2A-2M hereof, and their predecessors, which shall include, but is not limited to, any person, corporation, company or business entity:  which formed part of any

3

combination, consolidation, merger or reorganization from which any party defendant was created or was the surviving corporation; whose assets, stock, property, products or product line was acquired by any party defendant; whose patent rights, trademark rights, trade secrets or goodwill was acquired by any party defendant; or, which was dominated or controlled by any party defendant to such an extent that said party defendant was the "alter ego" of said corporation.

3.     The plaintiff's cause of action arises from the defendants: (a) transacting business in Massachusetts; (b) contracting to supply and/or sell goods in Massachusetts; (c) doing or causing a tortious act to be done within Massachusetts; and/or, (d) causing the consequence of a tortious act to occur within Massachusetts.

4.     The plaintiff, Linda R. Bouley, was exposed to defendants' asbestos and asbestos-containing materials while living with her father, who worked as an electronics technician in New England and various other states from approximately 1959 to the 1970's.

5.     During the period of time set forth in Paragraph 4, the plaintiff, Linda R. Bouley, was exposed to and did inhale and/or ingest asbestos dust, fibers, and particles, which dust, fibers, and particles came from the asbestos or asbestos-containing products which were mined, milled, manufactured, fabricated, supplied, sold, and/or specified by the defendant corporations.

6.     The asbestos and asbestos-containing products which the plaintiff, Linda R. Bouley, was exposed to were mined, milled, manufactured, fabricated, supplied, sold, and/or specified by the defendant corporations, acting through their duly authorized agents, servants, and employees, who were then and there acting in the course and scope of their employment and in furtherance of the business of the defendants.

4

7.      At all times pertinent hereto, the defendant corporations were engaged in the business of mining, milling, manufacturing, fabricating, supplying, and/or selling asbestos and asbestos-containing products and/or equipment which included and/or specified asbestos and asbestos-containing products to be used thereon or therein.

8.      At all times pertinent hereto, the asbestos products were products mined, milled, manufactured, fabricated, supplied and/or sold by the defendant corporations and reached the plaintiff, Linda R. Bouley, without any substantial change in the condition of the product or products from the time that they were sold.

## COUNT I - NEGLIGENCE

9.      The plaintiff realleges the allegations of Paragraphs 1 through 8 of the Complaint, and by reference, makes them part of this Count.

10.     It was the duty of the defendant corporations to use and exercise reasonable and due care in the manufacture, fabricating, testing, inspection, production, marketing, packaging and sale of their asbestos and asbestos-containing products or equipment.

11.     It was also the duty of the defendant corporations to provide detailed and adequate instructions relative to the proper and safe handling and use of their asbestos and asbestos products and equipment and to provide detailed and adequate warnings concerning any and all dangers, characteristics, and potentialities of their asbestos and asbestos-containing products and equipment.

12.     It was the continuing duty of the defendant corporations to advise and warn purchasers, consumers, users, and prior purchasers, consumers, and users of all dangers, characteristics, potentialities and defects discovered subsequent to their initial marketing or sale of their asbestos and asbestos-containing products and equipment.

5

13.     Yet, nevertheless, wholly disregarding the aforesaid duties, the defendant corporations breached their duties by: (a) failing to warn the plaintiff, Linda R. Bouley, of the dangers, characteristics, and potentialities of their asbestos-containing product or products when the defendant corporations knew or should have known that exposure to their asbestos-containing products would cause disease and injury; (b) failing to warn the plaintiff, Linda R. Bouley, of the dangers to which she was exposed when they knew or should have known of the dangers; (c) failing to exercise reasonable care to warn the plaintiff, Linda R. Bouley, of what would be safe, sufficient, and proper protective clothing, equipment, and appliances when working with or near or being exposed to their asbestos and asbestos-containing products; (d) failing to provide safe, sufficient and proper protective clothing, equipment and appliances with their asbestos-containing product or products; (e) failing to test their asbestos and asbestos products in order to ascertain the extent of dangers involved upon exposure thereto; (f) failing to conduct such research as should have been conducted in the exercise of reasonable care, in order to ascertain the dangers involved upon exposure to their asbestos and asbestos-containing products; (g) failing to remove the product or products from the market when the defendant corporations knew or should have known of the hazards of exposure to their asbestos and asbestos-containing products; (h) failing upon discovery of the dangers, hazards, and potentialities of exposure to asbestos to adequately warn and apprise the plaintiff, Linda R. Bouley, of the dangers, hazards, and potentialities discovered; (i) failing upon discovery of the dangers, hazards, and potentialities of exposure to asbestos to package said asbestos and asbestos-containing products so as to eliminate said  dangers, hazards, and potentialities; (j) failing to provide an adequate warning to those who would foreseeably come into contact with asbestos and asbestos-containing material which was specified, recommended, required or

6

necessarily used in the installation and/or continued maintenance of the defendant's equipment, and, (k) generally using unreasonable, careless, and negligent conduct in the manufacture, fabricating, supply, or sale of their asbestos and asbestos-containing products.

14.     As a direct and proximate result of the unreasonable, careless, and negligent conduct of the defendant corporations, the plaintiff, Linda R. Bouley, has developed peritoneal mesothelioma and other asbestos-related disease, as a result of which the plaintiff, Linda R. Bouley, has incurred medical expenses, suffered a dramatic reduction in her life expectancy, incurred great mental and physical pain and suffering, and suffered an impairment in her enjoyment of life, which damages are continuing in nature.

15.     The defendants knew, or with the reasonable exercise of care, should have known of the dangerous characteristics, properties, and potentialities of asbestos and asbestos-containing products.

WHEREFORE, the plaintiff, Linda R. Bouley, demands compensatory damages, plus interest and costs.

## COUNT II - BREACH OF EXPRESSED AND IMPLIED WARRANTIES

16.     The plaintiff realleges the allegations of Paragraphs 1 through 15 of the Complaint, and by reference, makes them part of this Count.

17.     The plaintiff, Linda R. Bouley, was a person whom the defendants could reasonably have expected to use, consume, or be affected by the defendants' asbestos and asbestos-containing products or equipment within the meaning of Massachusetts General Laws c. 106, §2-318, as the defendants knew or had reason to know that their asbestos-containing products would be used in the insulation or construction industry and that individuals such as the plaintiff, Linda R. Bouley, would come in contact with such asbestos materials.

7

18.    The defendants expressly and impliedly warranted that the asbestos and asbestos-containing products and equipment described above were merchantable, safe, and fit for their ordinary purposes and the particular purposes and requirements of the plaintiff, Linda R. Bouley.

19.    The defendants had reason to know of the particular purposes for which their asbestos and asbestos-containing products and equipment would be used.

20.    The plaintiff, Linda R. Bouley, relied upon the defendants' skill or judgment in selecting suitable mechanical material, insulation or construction products for safe use.

21.    The defendants breached these warranties, in that the asbestos-containing products and equipment they sold were not merchantable, safe, suitable, or fit for their ordinary or particular purposes.

22.    As a direct and proximate result of the defendants' breach of warranties, the plaintiff, Linda R. Bouley, has developed peritoneal mesothelioma and other asbestos-related disease, as a result of which the plaintiff, Linda R. Bouley, has incurred medical expenses, suffered a dramatic reduction in her life expectancy, incurred great mental and physical pain and suffering, and suffered an impairment in her enjoyment of life, which damages are continuing in nature.

WHEREFORE, the plaintiff, Linda R. Bouley, demands compensatory damages, plus interest and costs.

## COUNT III - STRICT LIABILITY DUE TO THE ABNORMALLY DANGEROUS ACTIVITY ON THE PREMISES OF DEFENDANTS, INTERNATIONAL BUSINESS MACHINES CORPORATION and ELECTRIC BOAT CORPORATION

23.    The plaintiff realleges the allegations of Paragraphs 1 through 22 of the Complaint, and by reference, makes them part of this Count.

8

24.     The defendants, International Business Machines Corporation and Electric Boat Corporation, carried on or permitted to have carried on upon their premises the abnormally dangerous activity of using asbestos and/or asbestos-containing material in the manufacture of its products, and insulating machinery and/or building systems in furtherance of their business.

25.     The defendants, International Business Machines Corporation and Electric Boat Corporation, knew, or with the reasonable exercise of care, should have known that the use of asbestos in the manufacturing process, and insulating machinery and/or building systems with asbestos are abnormally dangerous activities.

26.     The plaintiff, Linda R. Bouley, was exposed to and did ingest the asbestos fibers which did escape from the premises of defendants, International Business Machines Corporation and Electric Boat Corporation, by way of the work clothes and person of her father, Robert Bouley.

27.     As a direct and proximate result of plaintiff, Linda R. Bouley's, exposure and ingestion of asbestos fibers upon the premises, and which escaped from the premises of the defendants, International Business Machines Corporation and Electric Boat Corporation, plaintiff, Linda R. Bouley, contracted peritoneal mesothelioma and other asbestos-related disease. As a result, the plaintiff has incurred medical expenses, suffered a dramatic reduction in her life expectancy, incurred great mental and physical pain and suffering, and suffered an impairment in her enjoyment of life which damages are continuing in nature.

WHEREFORE, the plaintiff, Linda R. Bouley, demands that defendants, International Business Machines Corporation and Electric Boat Corporation, be held strictly liable for compensatory damages, plus interest and costs.

9

## COUNT IV - NEGLIGENCE OF DEFENDANTS, INTERNATIONAL BUSINESS MACHINES CORPORATION and ELECTRIC BOAT CORPORATION

28.     The plaintiff realleges the allegations of Paragraphs 1 through 27 of the Complaint, and by reference, makes them part of this Count.

29.     The defendants, International Business Machines Corporation and Electric Boat Corporation, used, or permitted the use of, asbestos in the manufacturing process and asbestos containing insulation products upon the machinery and/or building systems of their premises.

30.     The defendants, International Business Machines Corporation and Electric Boat Corporation, knew or should have known that the use of asbestos and asbestos-containing material posed a danger not only to invitees upon the premises, such as the plaintiff's Father, Robert Bouley, but also to others, such as the plaintiff, Linda R. Bouley, who would foreseeably be exposed to and be injured by such asbestos.

31.     The defendants, International Business Machines Corporation and Electric Boat Corporation, owed a duty of due care to all licensees and invitees upon the premises under their ownership or control as well as others, such as plaintiff, Linda R. Bouley, who would foreseeably suffer injury due to the activities of the defendants.

32.     The defendants, International Business Machines Corporation and Electric Boat Corporation, breached their duty to exercise due care owed to the plaintiff, Linda R. Bouley, by specifying and authorizing the use of asbestos and asbestos-containing material on their premises, by failing to take adequate and appropriate measures to ensure that asbestos did not escape from the premises, and by failing to provide an adequate and appropriate warning to workers upon their premises of the dangerous properties of the asbestos with which they worked.

33.     As a direct and proximate result of the defendant's breaches of duties owed to the plaintiff, she was exposed to, did inhale and ingest the fibers of the asbestos materials thereon.

34.     As a direct and proximate result of the plaintiff, Linda R. Bouley's exposure, inhalation and ingestion of asbestos fibers from the premises of the defendants, International Business Machines Corporation and Electric Boat Corporation, the plaintiff contracted malignant mesothelioma and other asbestos-related disease.  As a result, the plaintiff has incurred medical expenses, suffered a dramatic reduction in her life expectancy, incurred great mental and physical pain and suffering, and suffered an impairment in her enjoyment of life which damages are continuing in nature.

WHEREFORE, plaintiff, Linda R. Bouley, demands compensatory damages plus interest and costs.

## COUNT V - MALICIOUS, WILLFUL, WANTON AND RECKLESS CONDUCT OR GROSS NEGLIGENCE

35.     The plaintiff realleges the allegations of Paragraphs 1 through 22 of the Complaint, and by reference, makes them part of this Count.

36.     As early as 1929, the defendants, or some of them, possessed medical and scientific data clearly indicating that asbestos and asbestos-containing products were hazardous to the health and safety of Linda R. Bouley and others in her position.

37.     The defendants, or some of them, during the 1930's, 1940's, 1950's, and 1960's became possessed of voluminous medical and scientific data, studies, and reports, which information conclusively established that asbestos and asbestos-containing products were hazardous to the health and safety of Linda R. Bouley and all other persons exposed to the products.

11

38.     The defendants, or some of them, since the 1930's have had numerous workmen's compensation claims filed against them by former asbestos workers or employees, or knew such claims were filed against asbestos product suppliers and manufacturers.

39.     Prompted by pecuniary motives, the defendants ignored and failed to act upon such medical and scientific data and conspired to deprive the public, and particularly the users, from access to said medical and scientific data, thereby depriving them of the opportunity of free choice as to whether or not to expose themselves to the asbestos products of the defendants.

40.     The defendants acted maliciously, willfully, wantonly, and recklessly, or with gross negligence, by continuing to market their asbestos products, with reckless disregard for the health and safety of the plaintiff's and other users and consumers, knowing the dangerous characteristics and propensities of said asbestos products, but still depriving those affected by the dangers from information about those dangers.

41.     Because the defendants acted maliciously, willfully, wantonly, and recklessly, or with gross negligence, in marketing their hazardous asbestos and asbestos-containing products, in ignoring the medical and scientific data which was available to them, and depriving consumers, users, and the general public from that medical and scientific data, the plaintiff is entitled to compensatory damages.

WHEREFORE, the plaintiff, Linda R. Bouley, demands punitive damages in addition to the damages demanded in Counts I through IV, plus interest and costs.

The plaintiff demands a trial by jury on all issues.

12

DATED:  May 31, 2016                          Respectfully submitted,


                                              Leah McMorris Carlsen, Esq.
                                              (BBO# 681437)
                                              **THORNTON LAW FIRM LLP**
                                              100 Summer Street, 30th Fl.
                                              Boston, MA 02110
                                              (617) 720-1333   FAX (617)720-2445
                                              lcarlsen@tenlaw.com




                          CERTIFICATE OF SERVICE

    I, Leah McMorris Carlsen, Esq., hereby certify that on this day I electronically served,
via File & Serve Xpress, the foregoing **SECOND AMENDED COMPLAINT**, on all
defendants' counsel of record in the above-captioned matter.

DATED:  May 31, 2016

                                              Leah McMorris Carlsen, Esq.

COMMONWEALTH OF MASSACHUSETTS

EASTERN COUNTIES, SS.

SUPERIOR COURT

IN RE: MASSACHUSETTS STATE COURT
ASBESTOS LITIGATION

MASSACHUSETTS
ASBESTOS
CONSOLIDATED
DOCKET

### PRETRIAL ORDER NO. 8

### ORDER AUTHORIZING ELECTRONIC
### SERVICE OF COURT FILED DOCUMENTS

**I.     INTRODUCTION**

Except as noted below, this Order shall apply to all pending and future cases in the

Massachusetts State Court Asbestos Personal Injury Litigation.  To the extent that the provisions

of this Order are inconsistent with any prior Orders of this Court, the provisions of this Order

shall supersede inconsistent provisions of prior orders.

This Order shall apply to all documents (including any exhibits or attachments to said

documents) that parties to the Massachusetts Asbestos Litigation are required by Massachusetts

Rules of Civil Procedure or any applicable Pretrial Order to serve on counsel of record, except

that it shall not apply to service of summonses and complaints, which shall continue to be served

by traditional means pursuant to Mass. R. Civ. P. 4.  Use of the Verilaw system is mandatory for

all parties in the Massachusetts Asbestos Litigation.  In addition, nothing in this Order shall have

any effect on the process by which documents are filed with the Court.  The parties must

continue to file all documents in paper form with the Court according to the applicable Rules and

Pretrial Orders.  This Order is not intended to affect the substantive rights of any party with

respect to any document.

## II.   PROCESS FOR SERVICE OF DOCUMENTS

1.   Verilaw Technologies, Inc. ("Verilaw") shall make available to the Court and to the parties in this litigation a system for providing electronic service, storage and delivery of documents ("the system").

2   A party seeking to effectuate service of a document covered by this Order, shall send the document to Verilaw by one of following three means of delivery: (1) electronic transfer via the Internet to Verilaw (the document being either a word-processing file or a scanned image of the document); (2) fax transmission; or (3) via overnight mail or U.S. mail addressed to Verilaw.  The cost per document (including exhibits) for service via Verilaw shall be $12.00 if electronic transfer method is used, except that each document posted to the Special Master Review Queue or Court Review Queue (the procedure for which is set forth in Section V below) shall cost $2.00.   Verilaw will charge an additional fee of $.30 per page if the document is faxed or mailed to Verilaw for upload.

3.   Regardless of transmission method, all document service must be initiated on the website by a registered user.  Verilaw shall then convert all documents into Adobe Portable Document Format and make them available to parties on an Internet website maintained by Verilaw ("the Website").

4.   Verilaw shall post all documents to the Website according to the following timetable:

(a)   Electronic documents shall be posted to the Website within one (1) hour of receipt of such document from a registered user;

(b)   Faxed documents shall be posted to the Website within six (6) business hours of receipt from a registered user; and

2

(c)    Mailed paper copy documents shall be posted to the Website within twenty-four

(24) hours of receipt of the overnight mail package.

5.    Loss of internet connectivity on the part of a user shall not extend any service or

filing deadlines.  For any day or partial day that the Verilaw system is out of service, deadlines

applicable to service of documents pursuant to this order shall be extended by one full day.  In

the event that a user loses internet connectivity for more than a day, that user may serve opposing

counsel and liaison counsel by traditional means, and upload the document to Verilaw once

internet connectivity is reestablished.  Alternatively, the user may transmit the document to

Verilaw through non-internet means.

6.    Verilaw shall maintain a "Single Case" docket for service in an individual case,

and an "All-Cases Docket" (also known as "Consolidated Docket") for documents (e.g., Standard

Affirmative Defenses) filed on the Massachusetts Asbestos Litigation Consolidated Docket.

Case-specific documents shall be posted to the "Single Case" docket, not the "All Cases

Docket."

7.    Documents posted on Verilaw need not contain visual representations of the filing

attorneys' signatures.  Where it is not possible for the attorney to insert an original signature,

attorneys shall (in place of a signature and where the signature would normally appear) place the

following declaration: "Original Signature on File."  Original documents filed with the Court

must contain original signatures.

8.    Under this order, counsel shall be exempt from the requirement of serving

signature pages to Disclosure Forms and/or Answers to Interrogatories via the Verilaw system.

However, once the Disclosure Form and/or Answers to Interrogatories are signed, counsel shall

notify all counsel of record that a copy of the signature page is available upon request, and shall

provide a copy to any requesting attorney within five business days of the request.

9.      Access to the Verilaw system shall be limited to registered users. Registered

users shall consist of authorized Court personnel and counsel of record or their designees within

their law firms. Verilaw shall provide each registered user with a username and password to

access the system. Verilaw personnel shall perform all administrative functions for the system,

except that registered users may use the "Case Management" function to adjust their mappings

(i.e. add or delete registered users who receive electronic notification in any given case).

10.     Any document electronically served pursuant to this Order shall be deemed

served as of the date and time it is transmitted to Verilaw. Any document transmitted to the

system shall certify in the Certificate of Service that a true and correct copy was electronically

served to counsel of record via Verilaw.

11.     Instructions for use of Verilaw shall be posted on the Verilaw Main Menu, which

is displayed each time a user logs onto Verilaw.

12.     Unless ordered by the Court, no documents that are filed under seal ("sealed

documents") shall be served via the system. Rather, service of sealed documents shall be made

via traditional means and pursuant to Court Rules, including Trial Court Uniform Rule VIII.

III.    **INITIAL SERVICE OF PROCESS**

13.     The Court encourages each party to utilize Verilaw to effectuate service of

process and complaints in lieu of the method specified in Mass.R.Civ.P. 4. Parties who agree to

be served with process electronically shall file with the Court and serve upon all counsel a notice

to that effect. If a party does not do so, that party shall continue to receive service of process by

traditional means.

4

## IV. ADDITION OF NEW CASES OR NEW PARTIES TO THE SYSTEM

14(a). For each new case filed on or after this Order, Plaintiffs' counsel shall within forty-eight hours of filing the complaint 1) contact Verilaw to initiate the electronic case docket or initiate it directly on the system, and 2) contact Verilaw to map to the case docket all defendants (who have a registered user) named in the case.

14(b). When a party serves a motion or pleading seeking to add new parties to a case, the serving party shall within forty-eight hours request that Verilaw map to the case docket all parties (who have a registered user) sought to be added. If a party sought to be added does not have a registered user, the moving party shall serve the motion by traditional means. Defense Liaison Counsel shall maintain and make available to all requesting parties a list identifying a designated registered user for each active defendant in the Massachusetts Asbestos Litigation. Defense counsel must designate one user within their law firm who will be responsible for receiving service on behalf of their defendant. Defense counsel will be responsible to map any additional users that they wish to receive service by utilizing the Case Management functions on the Verilaw system.

15. When a new party to the Massachusetts Asbestos Litigation is named or added in a case, the party seeking to name or add the new party shall serve a copy of this order upon the new party. New parties shall, within 20 days of receipt of service, contact Defendants' Liaison Counsel to request a Verilaw account be established on their behalf and to designate a registered user to receive service on behalf of the new defendant. All subsequent service to that party shall be made electronically in accordance with the provisions above.

## V. MOTION PRACTICE PROCEDURES

16. Motion practice shall be modified as follows:

A.    Moving parties may incorporate a motion and supporting memorandum into one document;

B.    With respect to discovery motions, the Certificate of Compliance with Superior Court Rule 9C shall be included in the motion itself; and

C.    With respect to summary judgment motions, the statement of material facts and statement of legal elements may be incorporated into the motion, and the responses thereto may be incorporated into the opposition, if any.

D.    All oppositions, Affidavit of Compliance and List of Papers Filed pursuant to Rule 9A must be threaded with an original motion on Verilaw. To thread a document with a motion, the user must locate the last document threaded to the motion, and choose the "Respond" option beside the document. The user will then be prompted to upload the document, which will then be threaded to the original motion. The burden of properly threading an opposition shall be on the party opposing the motion. The burden of properly threading an Affidavit of Compliance or List of Papers Filed shall be on the moving party.

17.    The Rule 9A process begins when the moving party serves its motion electronically via Verilaw to the appropriate docket. The remainder of the process will depend on whether or not the motion is opposed:

A.    **Unopposed Motions**

If no opposition is received within the time permitted by Rule 9A or Massachusetts Asbestos Litigation Pre-Trial Order, the following procedures apply:

1.    Unopposed motions do not receive Special Master review.

2.    The moving party shall do the following:

     A.    File the original motion and Affidavit of Compliance pursuant to Rule 9A with the Middlesex Superior Court.

     B.    Post the Affidavit of Compliance (which shall be threaded to the original motion) to the Court Review Queue. This will prompt the Court to issue a ruling.

3.    When the Court rules on the motion, the Verilaw system will automatically thread the ruling with the original motion. Parties to the case will be advised of the ruling via e-file notification.

**B.**    <u>Opposed Motions</u>

If a motion is opposed within the time period prescribed by Rule 9A or Massachusetts Asbestos Litigation Pre-trial Order, the following procedures apply:

1.    Opposed motions require Special Master review and recommendations.

2.    To obtain the Special Master's recommendation, the moving party shall do the following:

     A.    Send to the Special Master hard copies of the motion, the oppositions received, and the List of Papers Filed pursuant to Rule 9A.

     B.    Post the List of Papers Filed (which shall be threaded to the original motion) to the Special Master Review Queue. This will prompt the Special Master to issue a recommendation.

3.    When the Special Master issues a recommendation, Verilaw will automatically thread the recommendation with the original motion. Parties to the case will be advised of the recommendation via e-file notification.

7

4.      To secure Court review, the moving party shall do the following:

     A.      File the original motion, all oppositions, the Special Master's

         Recommendation and the List of Papers Filed pursuant to Rule 9A

         with the Middlesex Superior Court.

     B.      Send a courtesy copy of all these documents to the Judge's

         chambers at Suffolk Superior Court.

     C.      Post the List of Papers Filed (which shall be threaded to the

         original motion) to the Court Review Queue. This will prompt the

         Court to issue a ruling.

5.      When the Court rules on the motion, Verilaw will automatically thread

the ruling to the original motion. Parties to the case will be advised of the ruling

via e-file notification.

18.      All orders issued via Verilaw shall constitute the order of the Court.

SO ORDERED THIS _23_ day of August, 2004.

                          _____

                          Margot Botsford
                          Justice of the Superior Court

8

# COMMONWEALTH OF MASSACHUSETTS

EASTERN COUNTIES, ss.                                    SUPERIOR COURT

IN RE:   MASSACHUSETTS STATE COURT   )
          MASSACHUSETTS             )    ASBESTOS
          ASBESTOS LITIGATION       )    CONSOLIDATED
          CASES                     )    DOCKET

PROPOUNDING PARTY: PLAINTIFFS

TO MANUFACTURING DEFENDANT AND ITS ATTORNEYS OF RECORD:

Plaintiffs require that said defendant answer, under oath, pursuant to the Massachusetts Rules of Civil Procedure the following interrogatories.

DEFINITIONS:

GEOGRAPHIC LIMITATION. Unless otherwise specifically set forth, the geographic scope of these interrogatories includes the New England states.

TIME LIMITATION. Unless otherwise specifically set forth, the time frame of these interrogatories is 1930 to the present.

"THIS DEFENDANT" (THIS DEFENDANT'S) shall mean the named defendant herein, all of its predecessors in interest, and all of its successors in interest.

"YOU" and "YOUR" refer to the defendant who is named above as the responding party.

"ASBESTOS-CONTAINING PRODUCT(S)" shall mean any product(s) of THIS DEFENDANT which contain(s) the mineral asbestos, including tremolite.

"RAW ASBESTOS FIBER" means asbestos fiber mined or milled, either packaged or in bulk, not compounded with other substances and essentially pure with the exception of naturally occurring trace amounts of other substances.

A request to describe the "NATURE" of ASBESTOS-CONTAINING PRODUCT(S) shall mean to describe the: (a) color, (b) texture, (c) form (i.e., powder, liquid, paste, solid,

board, cloth, blanket, wire insulation, etc.) and (d) physical dimensions (length, width, height, volume and weight).

"WRITING". "Writing" means handwritten typewriting, printing, photostating, photographing, and every other means of recording upon any tangible thing any form of communication or representation, including letters, words, pictures, sounds, or symbols, or combinations thereof.

A request to "IDENTIFY" a "DOCUMENT" or "WRITING" shall mean a request to state: (a) the author, (b) addressee; (c) date of origin; (d) the nature of the writing or document (e.g., letter, telephone memorandum, audio tape recording, photograph, etc.); and (e) its present location and name and present address of custodian thereof.

A request to state the "IDENTITY" of a person or individual means to state his or her name, the place of employment, job title, present business or present or last known home address, and present business telephone number.

"NEW ENGLAND" shall encompass the following six (6) states:  Massachusetts, New Hampshire, Maine, Vermont, Rhode Island and Connecticut.

A "CONTRACT UNIT(S)" shall mean a department, division, subdivision, branch, or group which has been or is now engaged in installation and/or removal of RAW ASBESTOS FIBER and/or ASBESTOS-CONTAINING PRODUCT(S).

"COMPANY" means any profit making private enterprise, including corporations, partnerships, joint ventures, and sole proprietorships.

INTERROGATORY NO. 1:

With respect to the individual verifying these answers on your behalf, state the following:

a.      their names;

b.      their present business address;

c.      their present job title;

-2-

d.     their date of first employment with you, and the dates and titles of each job

       position they have held while they were employed by you.

ANSWER:

INTERROGATORY NO. 2:

State whether YOU are a corporation.  If so, state:

a.     YOUR full corporate name;

b.     the state of incorporation;

c.     the date of incorporation;

d.     the address of YOUR principal place of business;

e.     if YOU are wholly-owned or if more than five (5) percent of the ownership

       interest of YOUR COMPANY is owned by another business entity, state that

       entity's name and principal place of business.

ANSWER:

INTERROGATORY NO. 3:

Has THIS DEFENDANT ever been identified, known, or done business under any other

name? If so, please state such name or names and the time period during which THIS

DEFENDANT was so known or identified.

ANSWER:

INTERROGATORY NO. 4:

State whether YOU have ever been registered or qualified to do business in each of any of

the New England States. If so, state the date YOU became qualified to conduct business in each

or any of the New England states.

ANSWER:

-3-

INTERROGATORY NO. 5:

Does THIS DEFENDANT currently have, or has THIS DEFENDANT had a department, division, subdivision, branch or group responsible for the design, development, manufacture, testing and use of ASBESTOS-CONTAINING PRODUCT(S). If so, state:

a.      the name of each present or former corporate department, division, subdivision, branch or group.

b.      the IDENTITY of the person or persons most knowledgeable about such department, division, subdivision, branch or group.

ANSWER:

The following interrogatories, M6-M13 are to be answered by **MANUFACTURERS** of asbestos or asbestos containing products.

INTERROGATORY NO. M6:

Has THIS DEFENDANT engaged in the MANUFACTURE of ASBESTOS- -CONTAINING PRODUCT(S) comprised in whole or in part of amosite asbestos fiber, if so, please state:

a.      the trade, brand name and/or generic name of each type of product;

b.      the date(s) THIS DEFENDANT first MANUFACTURED each type of product;

c.      the date(s) THIS DEFENDANT ceased MANUFACTURING each type of product;

d.      a description of the chemical composition of each type of product, including:

      i.      the type(s) and/or grade(s) of RAW ASBESTOS FIBER contained in each type of product;

      ii.      the quantitative percentage of the type(s) of RAW ASBESTOS FIBER in each type of product;

      iii.      any change(s) in the quantitative percentages of the type(s) of RAW ASBESTOS FIBER in each type of product;

−4−

e.   the NATURE of each type of product;

f.   a description of any wording, markings and/or logo on each type of product;

g.   the recommended use(s) of each type of product, including temperature limits;

h.   the name(s) of the manufacturer(s), at the time of manufacture, of each type of product;

i.   the date(s) each such manufacturer's product was manufactured by this defendant.

j.   the name(s) and address(es) of the supplier(s) of the amosite asbestos fiber used in each type of product;

k.   the IDENTITY of the person(s) most knowledgeable concerning the purchase of amosite asbestos fiber by THIS DEFENDANT.

ANSWER:

INTERROGATORY NO. M7:

Has THIS DEFENDANT engaged in the MANUFACTURING of amosite asbestos fiber; if so, state:

a.   the name and location of each amosite asbestos mine which THIS DEFENDANT presently operates, has operated, or in which THIS DEFENDANT has or had an ownership interest, including the dates of such ownership, and the grade of amosite asbestos fiber mined; or the manufacturer of any such fiber manufactured by this defendant, including dates this defendant installed fiber at each such manufacturer.

b.   the date(s) THIS DEFENDANT first MANUFACTURED amosite asbestos fiber;

c.   the date(s) THIS DEFENDANT ceased MANUFACTURING amosite asbestos fiber;

d.   the grade(s) of such amosite asbestos fiber MANUFACTURED by THIS DEFENDANT;

    e.     the recommended use(s) of each grade of such amosite asbestos fiber, including

         any temperature limits;

    f.     the name(s) and address(es) of the supplier(s) of amosite asbestos fiber to THIS

         DEFENDANT.

ANSWER:

INTERROGATORY NO. M8:

Has THIS DEFENDANT engaged in the MANUFACTURING of ASBESTOS-

CONTAINING PRODUCTS comprised in whole or in part of chrysotile asbestos fiber; if so,

please state:

    a.     the trade, brand name and/or generic name of each type of product;

    b.     the date(s) this DEFENDANT first MANUFACTURED each type of product;

    c.     the date(s) this DEFENDANT ceased MANUFACTURING each type of product;

    d.     a description of the chemical composition of each type of product, including:

         i.     the type(s) and grade(s) of asbestos fiber contained in each type of

            product;

         ii.    the quantitative percentage of the types of asbestos fiber in each type of

            product;

         iii.   any change(s) in the quantitative percentages of the type(s) of asbestos

            fiber in each type of product;

    e.     the NATURE of each type of product;

    f.     a description of any wording, markings and/or logo on each type of product;

    g.    the recommended use(s) of each type of product, including temperature limits;

    h.    the name(s) of the manufacturer(s), at the time of manufacture, of each type of

         product;

    i.     the date(s) each such manufacturer's product was manufactured by this defendant.

j.    the name(s) and address(es) of the supplier(s) of the chrysotile asbestos fiber used in each type of product;

k.    the IDENTITY of the person(s) most knowledgeable concerning the purchase of chrysotile asbestos fiber by THIS DEFENDANT.

ANSWER:

INTERROGATORY NO. M9:

Has THIS DEFENDANT engaged in the MANUFACTURING of chrysotile asbestos fiber; if so, please state:

a.    the name and location of each chrysotile asbestos mine which THIS DEFENDANT presently operates, has operated, or in which THIS DEFENDANT has or had an ownership interest, including the dates of such ownership, and the grade of chrysotile asbestos fiber mined; or the manufacturer of any such fiber manufactured by this defendant, including dates this defendant installed fiber at each such manufacturer.

b.    the date(s) THIS DEFENDANT first MANUFACTURED chrysotile asbestos fiber;

c.    the date(s) THIS DEFENDANT ceased MANUFACTURING chrysotile asbestos fiber;

d.    the grade(s) of such chrysotile asbestos fiber MANUFACTURED by THIS DEFENDANT;

e.    the recommended use(s) of each grade of such chrysotile asbestos fiber, including temperature limits;

f.    the name(s) and address(es) of the supplier(s) of chrysotile asbestos fiber to THIS DEFENDANT.

ANSWER:

INTERROGATORY NO. M10:

Has THIS DEFENDANT engaged in the MANUFACTURING of ASBESTOS-CONTAINING PRODUCTS comprised in whole or in part of crocidolite asbestos fiber; if so, please state:

a.    the trade, brand name and/or generic name of each type of product;

b.    the date(s) THIS DEFENDANT first MANUFACTURED each type of product;

c.    the date(s) THIS DEFENDANT ceased MANUFACTURING each type of product;

d.    a description of the chemical composition of each type of product, including:

i.    the type(s) and grade(s) of asbestos fiber contained in each type of product;

ii.    the quantitative percentage of the type(s) of fiber in each type of product;

iii.    any change(s) in the quantitative percentages of the type(s) of asbestos fiber in each type of product;

e.    the NATURE of each type of product;

f.    a description of any wording, markings and/or logo on each type of product;

g.    the recommended use(s) of each type of product, including temperature limits;

h.    the name(s) of the manufacturer(s), at the time of manufacture, of each type of product;

i.    the date(s) each such manufacturer's product was manufactured by this defendant.

j.    the name(s) and address(es) of the supplier(s) of the crocidolite asbestos fiber used in each type of product;

k.    the IDENTITY of the person(s) most knowledgeable concerning the purchase of crocidolite asbestos fiber by THIS DEFENDANT.

ANSWER:

INTERROGATORY NO. M11:

Has THIS DEFENDANT engaged in the MANUFACTURING of crocidolite asbestos fiber; if so, please state:

    a.    the name and location of each crocidolite asbestos mine which THIS DEFENDANT presently operates, has operated, in the, and/or in which THIS DEFENDANT has or had an ownership interest, including the dates of such ownership, and the grade of asbestos fiber mined; or the manufacturer of any such fiber manufactured by this defendant, including dates this defendant installed fiber at each such manufacturer.

    b.    the date(s) THIS DEFENDANT first MANUFACTURED crocidolite asbestos fiber;

    c.    the grade(s) of such crocidolite asbestos fiber MANUFACTURED by THIS DEFENDANT;

    e.    the recommended use(s) of each grade of such crocidolite asbestos fiber, including temperature limits;

    f.    the name(s) and address(es) of the supplier(s) of crocidolite asbestos fiber to THIS DEFENDANT.

ANSWER:

INTERROGATORY NO. M12:

Does or did THIS DEFENDANT own 5% or more of the shares of stock in a COMPANY which MANUFACTURED ASBESTOS-CONTAINING PRODUCT(S); if so, please state:

    a.    the name of such COMPANY;

    b.    the date of incorporation of such COMPANY;

    c.    the state of incorporation of such COMPANY:

    d.    the date such interest was acquired;

    e.    the date such interest changed or terminated, if applicable;

   f.      the name and location of each facility of such COMPANY;

   g.      the name of each type of ASBESTOS-CONTAINING PRODUCT(S)

           manufactured, process and/or assembled by such COMPANY.

ANSWER:

INTERROGATORY NO. M13:

      Does or did THIS DEFENDANT have a 5% or greater interest in any COMPANY that

MANUFACTURED RAW ASBESTOS FIBER; if so, please state:

   a.      the name of such COMPANY;

   b.      the date of incorporation of charter of such COMPANY;

   c.      the date or country of incorporation of such COMPANY;

   d.      the date such interest was acquired;

   e.      the dates such interest changed or terminated, if applicable;

   f.      the name and location of each asbestos mine owned by such COMPANY;

   g.      the grade and type of RAW ASBESTOS FIBER mined at each mine.

ANSWER:


      The following interrogatories, S6-S13 are to be answered by **SELLERS** of asbestos or

asbestos containing products.

INTERROGATORY NO. S6:

      Has THIS DEFENDANT engaged in the SELLING of ASBESTOS-CONTAINING

PRODUCT(S) comprised in whole or in part of amosite asbestos fiber, if so, please state:

   a.      the trade, brand name and/or generic name of each type of product;

   b.      the date(s) THIS DEFENDANT first SOLD each type of product;

   c.      the date(s) THIS DEFENDANT ceased SELLING each type of product;

   d.      a description of the chemical composition of each type of product, including:

    i.    the type(s) and/or grade(s) of RAW ASBESTOS FIBER contained in each type of product;

    ii.    the quantitative percentage of the type(s) of RAW ASBESTOS FIBER in each type of product;

    iii.    any change(s) in the quantitative percentages of the type(s) of RAW ASBESTOS FIBER in each type of product;

e.    the NATURE of each type of product;

f.    a description of any wording, markings and/or logo on each type of product;

g.    the recommended use(s) of each type of product, including temperature limits;

h.    the name(s) of the manufacturer(s), at the time of manufacture, of each type of product;

i.    the date(s) each such manufacturer's product was sold by this defendant;

j.    the date(s) each such manufacturer's product was INSTALLED by this defendant;

k.    the name(s) and address(es) of the supplier(s) of the amosite asbestos fiber used in each type of product;

l.    the IDENTITY of the person(s) most knowledgeable concerning the purchase of amosite asbestos fiber by THIS DEFENDANT.

ANSWER:

INTERROGATORY NO. S7:

Has THIS DEFENDANT engaged in the SELLING of amosite asbestos fiber; if so, state:

a.    the name and location of each amosite asbestos mine which THIS DEFENDANT presently operates, has operated, or in which THIS DEFENDANT has or had an ownership interest, including the dates of such ownership, and the grade of amosite asbestos fiber mined; or the manufacturer of any such fiber installed by this defendant, including dates this defendant installed fiber at each such manufacturer.

b.   the date(s) THIS DEFENDANT first SOLD amosite asbestos fiber;

c.   the date(s) THIS DEFENDANT ceased SELLING amosite asbestos fiber;

d.   the grade(s) of such amosite asbestos fiber SOLD by THIS DEFENDANT;

e.   the recommended use(s) of each grade of such amosite asbestos fiber, including any temperature limits;

f.   the name(s) and address(es) of the supplier(s) of amosite asbestos fiber to THIS DEFENDANT.

ANSWER:

INTERROGATORY NO. S8:

Has THIS DEFENDANT engaged in the SELLING of ASBESTOS-CONTAINING PRODUCTS comprised in whole or in part of chrysotile asbestos fiber; if so, please state:

a.   the trade, brand name and/or generic name of each type of product;

b.   the date(s) this DEFENDANT first SOLD each type of product;

c.   the date(s) this DEFENDANT ceased SELLING each type of product;

d.   a description of the chemical composition of each type of product, including:

   i.   the type(s) and grade(s) of asbestos fiber contained in each type of product;

   ii.   the quantitative percentage of the types of asbestos fiber in each type of product;

   iii.   any change(s) in the quantitative percentages of the type(s) of asbestos fiber in each type of product;

e.   the NATURE of each type of product;

f.   a description of any wording, markings and/or logo on each type of product;

g.   the recommended use(s) of each type of product, including temperature limits;

h.   the name(s) of the manufacturer(s), at the time of manufacture, of each type of product;

i. the date(s) each such manufacturer's product was sold by this defendant;

j. the date(s) each such manufacturer's product was installed by this defendant.

k. the name(s) and address(es) of the supplier(s) of the chrysotile asbestos fiber used in each type of product;

l. the IDENTITY of the person(s) most knowledgeable concerning the purchase of chrysotile asbestos fiber by THIS DEFENDANT.

ANSWER:

INTERROGATORY NO. S9:

Has THIS DEFENDANT engaged in the SELLING of chrysotile asbestos fiber; if so, please state:

a. the name and location of each chrysotile asbestos mine which THIS DEFENDANT presently operates, has-operated, or in which THIS DEFENDANT has or had an ownership interest, including the dates of such ownership, and the grade of chrysotile asbestos fiber mined; or the manufacturer of any such fiber installed by this defendant, including dates this defendant installed fiber at each such manufacturer.

b. the date(s) THIS DEFENDANT first SOLD chrysotile asbestos fiber;

c. the date(s) THIS DEFENDANT ceased SELLING chrysotile asbestos fiber;

d. the grade(s) of such chrysotile asbestos fiber SOLD by THIS DEFENDANT;

e. the recommended use(s) of each grade of such chrysotile asbestos fiber, including temperature limits;

f. the name(s) and address(es) of the supplier(s) of chrysotile asbestos fiber to THIS DEFENDANT.

ANSWER:

INTERROGATORY NO. S10:

Has THIS DEFENDANT engaged in the SELLING of ASBESTOS-CONTAINING PRODUCTS comprised in whole or in part of crocidolite asbestos fiber; if so, please state:

    a.     the trade, brand name and/or generic name of each type of product;

    b.     the date(s) THIS DEFENDANT first SOLD each type of product;

    c.     the date(s) THIS DEFENDANT ceased SELLING each type of product;

    d.     a description of the chemical composition of each type of product, including:

         i.     the type(s) and grade(s) of asbestos fiber contained in each type of product;

         ii.     the quantitative percentage of the type(s) of fiber in each type of product;

         iii.     any change(s) in the quantitative percentages of the type(s) of asbestos fiber in each type of product;

    e.     the NATURE of each type of product;

    f.     a description of any wording, markings and/or logo on each type of product;

    g.     the recommended use(s) of each type of product, including temperature limits;

    h.     the name(s) of the manufacturer(s), at the time of manufacture, of each type of product;

    i.     the date(s) each such manufacturer's product was sold by this defendant;

    j.     the name(s) and address(es) of the supplier(s) of the crocidolite asbestos fiber used in each type of product;

    k.     the IDENTITY of the person(s) most knowledgeable concerning the purchase of crocidolite asbestos fiber by THIS DEFENDANT.

ANSWER:

INTERROGATORY NO. S11:

Has THIS DEFENDANT engaged in the SELLING of crocidolite asbestos fiber; if so, please state:

−14−

a.   the name and location of each crocidolite asbestos mine which THIS

DEFENDANT presently operates, has operated, in the, and/or in which THIS

DEFENDANT has or had an ownership interest, including the dates of such

ownership, and the grade of asbestos fiber mined; or the manufacturer of any such

fiber sold by this defendant, including dates this defendant sold fiber at each such

manufacturer.

b.   the date(s) THIS DEFENDANT first SOLD crocidolite asbestos fiber;

c.   the grade(s) of such crocidolite asbestos fiber SOLD by THIS DEFENDANT;

e.   the recommended use(s) of each grade of such crocidolite asbestos fiber,

including temperature limits;

f.   the name(s) and address(es) of the supplier(s) of crocidolite asbestos fiber to THIS

DEFENDANT.

ANSWER:

INTERROGATORY NO. S12:

Does or did THIS DEFENDANT own 5% or more of the shares of stock in a COMPANY

which SOLD ASBESTOS-CONTAINING PRODUCT(S); if so, please state:

a.   the name of such COMPANY;

b.   the date of incorporation of such COMPANY;

c.   the state of incorporation of such COMPANY:

d.   the date such interest was acquired;

e.   the date such interest changed or terminated, if applicable;

f.   the name and location of each facility of such COMPANY;

g.   the name of each type of ASBESTOS-CONTAINING PRODUCT(S)

manufactured, process and/or assembled by such COMPANY.

ANSWER:

INTERROGATORY NO. S13:

Does or did THIS DEFENDANT have a 5% or greater interest in any COMPANY that SOLD RAW ASBESTOS FIBER; if so, please state:

    a.    the name of such COMPANY;

    b.    the date of incorporation of charter of such COMPANY;

    c.    the date or country of incorporation of such COMPANY;

    d.    the date such interest was acquired;

    e.    the dates such interest changed or terminated, if applicable;

    f.    the name and location of each asbestos mine owned by such COMPANY;

    g.    the grade and type of RAW ASBESTOS FIBER mined at each mine.

ANSWER:


The following interrogatories, D6-D13 are to be answered by DISTRIBUTORS of asbestos or asbestos containing products.

INTERROGATORY NO. D6:

Has THIS DEFENDANT engaged in the DISTRIBUTING of ASBESTOS-CONTAINING PRODUCT(S) comprised in whole or in part of amosite asbestos fiber, if so, please state:

    a.    the trade, brand name and/or generic name of each type of product;

    b.    the date(s) THIS DEFENDANT first DISTRIBUTED each type of product;

    c.    the date(s) THIS DEFENDANT ceased DISTRIBUTING each type of product;

    d.    a description of the chemical composition of each type of product, including:

        i.    the type(s) and/or grade(s) of RAW ASBESTOS FIBER contained in each type of product;

        ii.    the quantitative percentage of the type(s) of RAW ASBESTOS FIBER in each type of product;

-16-

      iii.    any change(s) in the quantitative percentages of the type(s) of RAW

            ASBESTOS FIBER in each type of product;

  e.    the NATURE of each type of product;

  f.    a description of any wording, markings and/or logo on each type of product;

  g.    the recommended use(s) of each type of product, including temperature limits;

  h.    the name(s) of the manufacturer(s), at the time of manufacture, of each type of

        product;

  i.    the date(s) each such manufacturer's product was distributed by this defendant;

  j.    the name(s) and address(es) of the supplier(s) of the amosite asbestos fiber used in

        each type of product;

  k.    the IDENTITY of the person(s) most knowledgeable concerning the purchase of

        amosite asbestos fiber by THIS DEFENDANT.

<u>ANSWER</u>:

<u>INTERROGATORY NO. D7</u>:

    Has THIS DEFENDANT engaged in the DISTRIBUTING of amosite asbestos fiber; if

so, state:

  a.    the name and location of each amosite asbestos mine which THIS DEFENDANT

        presently operates, has operated, or in which THIS DEFENDANT has or had an

        ownership interest, including the dates of such ownership; and the grade of

        amosite asbestos fiber mined; or the manufacturer of any such fiber distributed by

        this defendant, including dates this defendant distributed fiber at each such

        manufacturer.

  b.    the date(s) THIS DEFENDANT first DISTRIBUTED amosite asbestos fiber;

  c.    the date(s) THIS DEFENDANT ceased DISTRIBUTING amosite asbestos fiber;

  d.    the grade(s) of such amosite asbestos fiber DISTRIBUTED by THIS

        DEFENDANT;

e.      the recommended use(s) of each grade of such amosite asbestos fiber, including
        any temperature limits;

f.      the name(s) and address(es) of the supplier(s) of amosite asbestos fiber to THIS
        DEFENDANT.

ANSWER:

INTERROGATORY NO. D8:

    Has THIS DEFENDANT engaged in the DISTRIBUTING of ASBESTOS–
CONTAINING PRODUCTS comprised in whole or in part of chrysotile asbestos fiber; if so,
please state:

a.      the trade, brand name and/or generic name of each type of product;

b.      the date(s) this DEFENDANT first DISTRIBUTED each type of product;

c.      the date(s) this DEFENDANT ceased DISTRIBUTING each type of product;

d.      a description of the chemical composition of each type of product, including:

        i.      the type(s) and grade(s) of asbestos fiber contained in each type of
                product;

        ii.     the quantitative percentage of the types of asbestos fiber in each type of
                product;

        iii.    any change(s) in the quantitative percentages of the type(s) of asbestos
                fiber in each type of product;

e.      the NATURE of each type of product;

f.      a description of any wording, markings and/or logo on each type of product;

g.      the recommended use(s) of each type of product, including temperature limits;

h.      the name(s) of the manufacturer(s), at the time of manufacture, of each type of
        product;

i.      the date(s) each such manufacturer's product was distributed by this defendant.

j.    the name(s) and address(es) of the supplier(s) of the chrysotile asbestos fiber used
      in each type of product;

k.    the IDENTITY of the person(s) most knowledgeable concerning the purchase of
      chrysotile asbestos fiber by THIS DEFENDANT.

<u>ANSWER:</u>

<u>INTERROGATORY NO. D9:</u>

Has THIS DEFENDANT engaged in the DISTRIBUTING of chrysotile asbestos fiber; if
so, please state:

a.    the name and location of each chrysotile asbestos mine which THIS
      DEFENDANT presently operates, has operated, or in which THIS DEFENDANT
      has or had an ownership interest, including the dates of such ownership, and the
      grade of chrysotile asbestos fiber mined; or the manufacturer of any such fiber
      distributed by this defendant, including dates this defendant distributed fiber at
      each such manufacturer.

b.    the date(s) THIS DEFENDANT first DISTRIBUTED chrysotile asbestos fiber;

c.    the date(s) THIS DEFENDANT ceased DISTRIBUTING chrysotile asbestos
      fiber;

d.    the grade(s) of such chrysotile asbestos fiber DISTRIBUTED by THIS
      DEFENDANT;

e.    the recommended use(s) of each grade of such chrysotile asbestos fiber, including
      temperature limits;

f.    the name(s) and address(es) of the supplier(s) of chrysotile asbestos fiber to THIS
      DEFENDANT.

<u>ANSWER:</u>

INTERROGATORY NO. D10:

Has THIS DEFENDANT engaged in the DISTRIBUTING of ASBESTOS-CONTAINING PRODUCTS comprised in whole or in part of crocidolite asbestos fiber; if so, please state:

a.    the trade, brand name and/or generic name of each type of product;

b.    the date(s) THIS DEFENDANT first DISTRIBUTED each type of product;

c.    the date(s) THIS DEFENDANT ceased DISTRIBUTING each type of product;

d.    a description of the chemical composition of each type of product, including:

   i.    the type(s) and grade(s) of asbestos fiber contained in each type of product;

   ii.   the quantitative percentage of the type(s) of fiber in each type of product;

   iii.  any change(s) in the quantitative percentages of the type(s) of asbestos fiber in each type of product;

e.    the NATURE of each type of product;

f.    a description of any wording, markings and/or logo on each type of product;

g.    the recommended use(s) of each type of product, including temperature limits;

h.    the name(s) of the manufacturer(s), at the time of manufacture, of each type of product;

i.    the date(s) each such manufacturer's product was distributed by this defendant;

j.    the name(s) and address(es) of the supplier(s) of the crocidolite asbestos fiber used in each type of product;

k.    the IDENTITY of the person(s) most knowledgeable concerning the purchase of crocidolite asbestos fiber by THIS DEFENDANT.

ANSWER:

-20-

INTERROGATORY NO. D11:

Has THIS DEFENDANT engaged in the DISTRIBUTING of crocidolite asbestos fiber; if so, please state:

    a.    the name and location of each crocidolite asbestos mine which THIS DEFENDANT presently operates, has operated, in the, and/or in which THIS DEFENDANT has or had an ownership interest, including the dates of such ownership, and the grade of asbestos fiber mined; or the manufacturer of any such fiber distributed by this defendant, including dates this defendant distributed fiber at each such manufacturer.

    b.    the date(s) THIS DEFENDANT first DISTRIBUTED crocidolite asbestos fiber;

    c.    the grade(s) of such crocidolite asbestos fiber DISTRIBUTED by THIS DEFENDANT;

    e.    the recommended use(s) of each grade of such crocidolite asbestos fiber, including temperature limits;

    f.    the name(s) and address(es) of the supplier(s) of crocidolite asbestos fiber to THIS DEFENDANT.

ANSWER:

INTERROGATORY NO. D12:

Does or did THIS DEFENDANT own 5% or more of the shares of stock in a COMPANY which DISTRIBUTED ASBESTOS-CONTAINING PRODUCT(S); if so, please state:

    a.    the name of such COMPANY;

    b.    the date of incorporation of such COMPANY;

    c.    the state of incorporation of such COMPANY:

    d.    the date such interest was acquired;

    e.    the date such interest changed or terminated, if applicable;

    f.    the name and location of each facility of such COMPANY;

g.    the name of each type of ASBESTOS-CONTAINING PRODUCT(S)

      manufactured, process and/or assembled by such COMPANY.

ANSWER:

INTERROGATORY NO. D13:

Does or did THIS DEFENDANT have a 5% or greater interest in any COMPANY that
DISTRIBUTED RAW ASBESTOS FIBER; if so, please state:

a.    the name of such COMPANY;

b.    the date of incorporation of charter of such COMPANY;

c.    the date or country of incorporation of such COMPANY;

d.    the date such interest was acquired;

e.    the dates such interest changed or terminated, if applicable;

f.    the name and location of each asbestos-mine owned by such COMPANY;

g.    the grade and type of RAW ASBESTOS FIBER mined at each mine.

ANSWER:


The following interrogatories, B6-B13 are to be answered by **BROKERS** of asbestos or
asbestos containing products.

INTERROGATORY NO. B6:

Has THIS DEFENDANT engaged in the BROKERING of ASBESTOS-CONTAINING
PRODUCT(S) comprised in whole or in part of amosite asbestos fiber, if so, please state:

a.    the trade, brand name and/or generic name of each type of product;

b.    the date(s) THIS DEFENDANT first BROKERED each type of product;

c.    the date(s) THIS DEFENDANT ceased BROKERING each type of product;

d.    a description of the chemical composition of each type of product, including:

      i.    the type(s) and/or grade(s) of RAW ASBESTOS FIBER contained in each

            type of product;

-22-

      ii.    the quantitative percentage of the type(s) of RAW ASBESTOS FIBER in each type of product;

      iii.    any change(s) in the quantitative percentages of the type(s) of RAW ASBESTOS FIBER in each type of product;

e.    the NATURE of each type of product;

f.    a description of any wording, markings and/or logo on each type of product;

g.    the recommended use(s) of each type of product, including temperature limits;

h.    the name(s) of the manufacturer(s), at the time of manufacture, of each type of product;

i.    the date(s) each such manufacturer's product was brokered by this defendant;

j.    the name(s) and address(es) of the supplier(s) of the amosite asbestos fiber used in each type of product;

k.    the IDENTITY of the person(s) most knowledgeable concerning the purchase of amosite asbestos fiber by THIS DEFENDANT.

ANSWER:

INTERROGATORY NO. B7:

Has THIS DEFENDANT engaged in the BROKERING of amosite asbestos fiber; if so, state:

a.    the name and location of each amosite asbestos mine which THIS DEFENDANT presently operates, has operated, or in which THIS DEFENDANT has or had an ownership interest, including the dates of such ownership, and the grade of amosite asbestos fiber mined; or the manufacturer of any such fiber brokered by this defendant, including dates this defendant brokered fiber at each such manufacturer.

b.    the date(s) THIS DEFENDANT first BROKERED amosite asbestos fiber;

c.    the date(s) THIS DEFENDANT ceased BROKERING amosite asbestos fiber;

     d.     the grade(s) of such amosite asbestos fiber BROKERED by THIS DEFENDANT;

     e.     the recommended use(s) of each grade of such amosite asbestos fiber, including any temperature limits;

     f.     the name(s) and address(es) of the supplier(s) of amosite asbestos fiber to THIS DEFENDANT.

ANSWER:

INTERROGATORY NO. B8:

     Has THIS DEFENDANT engaged in the BROKERING of ASBESTOS-CONTAINING PRODUCTS comprised in whole or in part of chrysotile asbestos fiber; if so, please state:

     a.     the trade, brand name and/or generic name of each type of product;

     b.     the date(s) this DEFENDANT first BROKERED each type of product;

     c.     the date(s) this DEFENDANT ceased BROKERING each type of product;

     d.     a description of the chemical composition of each type of product, including:

          i.     the type(s) and grade(s) of asbestos fiber contained in each type of product;

          ii.     the quantitative percentage of the types of asbestos fiber in each type of product;

          iii.     any change(s) in the quantitative percentages of the type(s) of asbestos fiber in each type of product;

     e.     the NATURE of each type of product;

     f.     a description of any wording, markings and/or logo on each type of product;

     g.     the recommended use(s) of each type of product, including temperature limits;

     h.     the name(s) of the manufacturer(s), at the time of manufacture, of each type of product;

     i.     the date(s) each such manufacturer's product was brokered by this defendant;

    j.    the name(s) and address(es) of the supplier(s) of the chrysotile asbestos fiber used in each type of product;

    k.    the IDENTITY of the person(s) most knowledgeable concerning the purchase of chrysotile asbestos fiber by THIS DEFENDANT.

ANSWER:

INTERROGATORY NO. B9:

Has THIS DEFENDANT engaged in the BROKERING of chrysotile asbestos fiber; if so, please state:

    a.    the name and location of each chrysotile asbestos mine which THIS DEFENDANT presently operates, has operated, or in which THIS DEFENDANT has or had an ownership interest, including the dates of such ownership, and the grade of chrysotile asbestos fiber mined; or the manufacturer of any such fiber brokered by this defendant, including dates this defendant brokered fiber at each such manufacturer.

    b.    the date(s) THIS DEFENDANT first BROKERED chrysotile asbestos fiber;

    c.    the date(s) THIS DEFENDANT ceased BROKERING chrysotile asbestos fiber;

    d.    the grade(s) of such chrysotile asbestos fiber BROKERED by THIS DEFENDANT;

    e.    the recommended use(s) of each grade of such chrysotile asbestos fiber, including temperature limits;

    f.    the name(s) and address(es) of the supplier(s) of chrysotile asbestos fiber to THIS DEFENDANT.

ANSWER:

INTERROGATORY NO. B10:

Has THIS DEFENDANT engaged in the BROKERING of ASBESTOS-CONTAINING PRODUCTS comprised in whole or in part of crocidolite asbestos fiber; if so, please state:

–25–

a.  the trade, brand name and/or generic name of each type of product;

b.  the date(s) THIS DEFENDANT first BROKERED each type of product;

c.  the date(s) THIS DEFENDANT ceased BROKERING each type of product;

d.  a description of the chemical composition of each type of product, including:

  i.  the type(s) and grade(s) of asbestos fiber contained in each type of product;

  ii.  the quantitative percentage of the type(s) of fiber in each type of product;

  iii.  any change(s) in the quantitative percentages of the type(s) of asbestos fiber in each type of product;

e.  the NATURE of each type of product;

f.  a description of any wording, markings and/or logo on each type of product;

g.  the recommended use(s) of each type of product, including temperature limits;

h.  the name(s) of the manufacturer(s), at the time of manufacture, of each type of product;

i.  the date(s) each such manufacturer's product was brokered by this defendant;

j.  the name(s) and address(es) of the supplier(s) of the crocidolite asbestos fiber used in each type of product;

k.  the IDENTITY of the person(s) most knowledgeable concerning the purchase of crocidolite asbestos fiber by THIS DEFENDANT.

ANSWER:

INTERROGATORY NO. B11:

Has THIS DEFENDANT engaged in the BROKERING of crocidolite asbestos fiber; if so, please state:

a.  the name and location of each crocidolite asbestos mine which THIS DEFENDANT presently operates, has operated, in the, and/or in which THIS DEFENDANT has or had an ownership interest, including the dates of such

-26-

ownership, and the grade of asbestos fiber mined; or the manufacturer of any such fiber brokered by this defendant, including dates this defendant brokered fiber at each such manufacturer.

b.   the date(s) THIS DEFENDANT first BROKERED crocidolite asbestos fiber;

c.   the grade(s) of such crocidolite asbestos fiber BROKERED by THIS DEFENDANT;

e.   the recommended use(s) of each grade of such crocidolite asbestos fiber, including temperature limits;

f.   the name(s) and address(es) of the supplier(s) of crocidolite asbestos fiber to THIS DEFENDANT.

ANSWER:

INTERROGATORY NO. B12:

Does or did THIS DEFENDANT own 5% or more of the shares of stock in a COMPANY which BROKERED ASBESTOS-CONTAINING PRODUCT(S); if so, please state:

a.   the name of such COMPANY;

b.   the date of incorporation of such COMPANY;

c.   the state of incorporation of such COMPANY:

d.   the date such interest was acquired;

e.   the date such interest changed or terminated, if applicable;

f.   the name and location of each facility of such COMPANY;

g.   the name of each type of ASBESTOS-CONTAINING PRODUCT(S) manufactured, process and/or assembled by such COMPANY.

ANSWER:

INTERROGATORY NO. B13:

Does or did THIS DEFENDANT have a 5% or greater interest in any COMPANY that BROKERED RAW ASBESTOS FIBER; if so, please state:

    a.     the name of such COMPANY;

    b.     the date of incorporation of charter of such COMPANY;

    c.     the date or country of incorporation of such COMPANY;

    d.     the date such interest was acquired;

    e.     the dates such interest changed or terminated, if applicable;

    f.     the name and location of each asbestos mine owned by such COMPANY;

    g.     the grade and type of RAW ASBESTOS FIBER mined at each mine.

<u>ANSWER:</u>


The following interrogatories, I6-I13 are to be answered by **INSTALLERS** of asbestos or asbestos containing products.

<u>INTERROGATORY NO. I6:</u>

Has THIS DEFENDANT engaged in the INSTALLING of ASBESTOS-CONTAINING PRODUCT(S) comprised in whole or in part of amosite asbestos fiber, if so, please state:

    a.     the trade, brand name and/or generic name of each type of product;

    b.     the date(s) THIS DEFENDANT first INSTALLED each type of product;

    c.     the date(s) THIS DEFENDANT ceased INSTALLING each type of product;

    d.     a description of the chemical composition of each type of product, including:

        i.     the type(s) and/or grade(s) of RAW ASBESTOS FIBER contained in each type of product;

        ii.     the quantitative percentage of the type(s) of RAW ASBESTOS FIBER in each type of product;

        iii.     any change(s) in the quantitative percentages of the type(s) of RAW ASBESTOS FIBER in each type of product;

    e.     the NATURE of each type of product;

    f.     a description of any wording, markings and/or logo on each type of product;

g.  the recommended use(s) of each type of product, including temperature limits;

h.  the name(s) of the manufacturer(s), at the time of manufacture, of each type of product;

i.  the date(s) each such manufacturer's product was installed by this defendant;

j.  the name(s) and address(es) of the supplier(s) of the amosite asbestos fiber used in each type of product;

k.  the IDENTITY of the person(s) most knowledgeable concerning the purchase of amosite asbestos fiber by THIS DEFENDANT.

ANSWER:

INTERROGATORY NO. 17:

Has THIS DEFENDANT engaged in the INSTALLING of amosite asbestos fiber; if so, state:

a.  the name and location of each amosite asbestos mine which THIS DEFENDANT presently operates, has operated, or in which THIS DEFENDANT has or had an ownership interest, including the dates of such ownership, and the grade of amosite asbestos fiber mined; or the manufacturer of any such fiber installed by this defendant, including dates this defendant installed fiber at each such manufacturer;

b.  the date(s) THIS DEFENDANT first INSTALLED amosite asbestos fiber;

c.  the date(s) THIS DEFENDANT ceased INSTALLING amosite asbestos fiber;

d.  the grade(s) of such amosite asbestos fiber INSTALLED by THIS DEFENDANT;

e.  the recommended use(s) of each grade of such amosite asbestos fiber, including any temperature limits;

f.  the name(s) and address(es) of the supplier(s) of amosite asbestos fiber to THIS DEFENDANT.

ANSWER:

INTERROGATORY NO. 18:

Has THIS DEFENDANT engaged in the INSTALLING of ASBESTOS-CONTAINING PRODUCTS comprised in whole or in part of chrysotile asbestos fiber; if so, please state:

a. the trade, brand name and/or generic name of each type of product;

b. the date(s) this DEFENDANT first INSTALLED each type of product;

c. the date(s) this DEFENDANT ceased INSTALLING each type of product;

d. a description of the chemical composition of each type of product, including:

    i. the type(s) and grade(s) of asbestos fiber contained in each type of product;

    ii. the quantitative percentage of the types of asbestos fiber in each type of product;

    iii. any change(s) in the quantitative percentages of the type(s) of asbestos fiber in each type of product;

e. the NATURE of each type of product;

f. a description of any wording, markings and/or logo on each type of product;

g. the recommended use(s) of each type of product, including temperature limits;

h. the name(s) of the manufacturer(s), at the time of manufacture, of each type of product;

i. the date(s) each such manufacturer's product was installed by this defendant;

j. the name(s) and address(es) of the supplier(s) of the chrysotile asbestos fiber used in each type of product;

k. the IDENTITY of the person(s) most knowledgeable concerning the purchase of chrysotile asbestos fiber by THIS DEFENDANT.

ANSWER:

INTERROGATORY NO. I9:

Has THIS DEFENDANT engaged in the INSTALLING of chrysotile asbestos fiber; if so, please state:

    a.    the name and location of each chrysotile asbestos mine which THIS DEFENDANT presently operates, has operated, or in which THIS DEFENDANT has or had an ownership interest, including the dates of such ownership, and the grade of chrysotile asbestos fiber mined; or the manufacturer of any such fiber installed by this defendant, including dates this defendant installed fiber at each such manufacturer;

    b.    the date(s) THIS DEFENDANT first INSTALLED chrysotile asbestos fiber;

    c.    the date(s) THIS DEFENDANT ceased INSTALLING chrysotile asbestos fiber;.

    d.    the grade(s) of such chrysotile asbestos fiber INSTALLED by THIS DEFENDANT;

    e.    the recommended use(s) of each grade of such chrysotile asbestos fiber, including temperature limits;

    f.    the name(s) and address(es) of the supplier(s) of chrysotile asbestos fiber to THIS DEFENDANT.

ANSWER:

INTERROGATORY NO. I10:

Has THIS DEFENDANT engaged in the INSTALLING of ASBESTOS-CONTAINING PRODUCTS comprised in whole or in part of crocidolite asbestos fiber; if so, please state:

    a.    the trade, brand name and/or generic name of each type of product;

    b.    the date(s) THIS DEFENDANT first INSTALLED each type of product;

    c.    the date(s) THIS DEFENDANT ceased INSTALLING each type of product;

    d.    a description of the chemical composition of each type of product, including:

    i.     the type(s) and grade(s) of asbestos fiber contained in each type of product;

    ii.    the quantitative percentage of the type(s) of fiber in each type of product;

    iii.   any change(s) in the quantitative percentages of the type(s) of asbestos fiber in each type of product;

e.    the NATURE of each type of product;

f.    a description of any wording, markings and/or logo on each type of product;

g.    the recommended use(s) of each type of product, including temperature limits;

h.    the name(s) of the manufacturer(s), at the time of manufacture, of each type of product;

i.    the date(s) each such manufacturer's product was installed by this defendant;

j.    the name(s) and address(es) of the supplier(s) of the crocidolite asbestos fiber used in each type of product;

k.    the IDENTITY of the person(s) most knowledgeable concerning the purchase of crocidolite asbestos fiber by THIS DEFENDANT.

ANSWER:

INTERROGATORY NO. I11:

Has THIS DEFENDANT engaged in the INSTALLING of crocidolite asbestos fiber; if so, please state:

a.    the name and location of each crocidolite asbestos mine which THIS DEFENDANT presently operates, has operated, in the, and/or in which THIS DEFENDANT has or had an ownership interest, including the dates of such ownership, and the grade of asbestos fiber mined; or the manufacturer of any such fiber installed by this defendant, including dates this defendant installed fiber at each such manufacturer;

b.   the date(s) THIS DEFENDANT first INSTALLED crocidolite asbestos fiber;

c.   the grade(s) of such crocidolite asbestos fiber INSTALLED by THIS
     DEFENDANT;

d.   the recommended use(s) of each grade of such crocidolite asbestos fiber,
     including temperature limits;

e.   the name(s) and address(es) of the supplier(s) of crocidolite asbestos fiber to THIS
     DEFENDANT.

ANSWER:

INTERROGATORY NO. I12:

Does or did THIS DEFENDANT own 5% or more of the shares of stock in a COMPANY
which INSTALLED ASBESTOS-CONTAINING PRODUCT(S); if so, please state:

a.   the name of such COMPANY;

b.   the date of incorporation of such COMPANY;

c.   the state of incorporation of such COMPANY: .

d.   the date such interest was acquired;

e.   the date such interest changed or terminated, if applicable;

f.   the name and location of each facility of such COMPANY;

g.   the name of each type of ASBESTOS-CONTAINING PRODUCT(S)
     manufactured, process and/or assembled by such COMPANY.

ANSWER:

INTERROGATORY NO. I13:

Does or did THIS DEFENDANT have a 5% or greater interest in any COMPANY that
INSTALLED RAW ASBESTOS FIBER; if so, please state:

a.   the name of such COMPANY;

b.   the date of incorporation of charter of such COMPANY;

c.   the date or country of incorporation of such COMPANY;

d.    the date such interest was acquired;

e.    the dates such interest changed or terminated, if applicable;

f.    the name and location of each asbestos mine owned by such COMPANY;

g.    the grade and type of RAW ASBESTOS FIBER mined at each mine.

ANSWER:


INTERROGATORY NO. 14:

Has THIS DEFENDANT warehoused any RAW ASBESTOS FIBER or ASBESTOS CONTAINING PRODUCT(S) in New England; if so, please state:

a.    the name and address of each warehouse facility;

b.    the year(s) THIS DEFENDANT utilized each facility;

c.    the IDENTITY of the custodian of warehousing records.

ANSWER:

INTERROGATORY NO. 15:

Has THIS DEFENDANT owned or operated facilities anywhere in the United States in which ASBESTOS-CONTAINING PRODUCT(S) have been manufactured, processed and/or assembled; if so, state:

a.    the address of each such facility, including city and state.

ANSWER:

INTERROGATORY NO. 16:

If THIS DEFENDANT owned or operated facilities in which ASBESTOS-CONTAINING PRODUCT(S) have been manufactured, processed and/or assembled, please state:

a.    the date said facilities began operation;

b.    the date said facility ceased operation; and

   c.    the name of each type of ASBESTOS-CONTAINING PRODUCT manufactured, processed or assembled at each such facility.

ANSWER:

INTERROGATORY NO. 17:

Has THIS DEFENDANT purchased or otherwise acquired any rights to the manufacture of ASBESTOS-CONTAINING PRODUCT(S). If so, state for each such ASBESTOS CONTAINING PRODUCT:

   a.    the trade, brand and/or generic name of such ASBESTOS-CONTAINING PRODUCT(S);

   b.    the name and location of any COMPANY from which such rights were purchased or acquired;

   c.    the IDENTITY of the custodian of records of such purchase(s) or acquisition(s).

ANSWER:

INTERROGATORY NO. 18:

Has THIS DEFENDANT applied for and/or received any patent(s) for any ASBESTOS-CONTAINING PRODUCT(S). If so, state for each such ASBESTOS-CONTAINING PRODUCT:

   a.    the product for which each patent was applied and/or issued;

   b.    the date(s) of application;

   c.    the date(s) of issuance of the patent(s) if granted;

   d.    the date(s) of renewal, if any;

   e.    the patent number(s);

   f.    the name of the individual or COMPANY to whom each patent was issued;

   g.    the IDENTITY of the custodian of patent records of THIS DEFENDANT.

ANSWER:

INTERROGATORY NO. 19:

Has THIS DEFENDANT registered any trademark(s) for any ASBESTOS-CONTAINING PRODUCT(S); if so, state for each such ASBESTOS-CONTAINING PRODUCT:

    a.    the product for which each trademark was registered;

    b.    whether the registration was State or Federal;

        i.    if a State, name the State;

    c.    date(s) of registration;

    d.    the term(s) thereof;

    e.    the date(s) of renewal;

    f.    the name of the individual or COMPANY to whom each trademark was registered;

    g.    the IDENTITY of the custodian of such trademark records of THIS DEFENDANT.

ANSWER:

INTERROGATORY NO. 20:

Did THIS DEFENDANT contract with the General Services Administration and/or other federal-government agency for the sale, anywhere in the United States, of RAW ASBESTOS FIBER between 1930 and 1980; if so, state for each such sale:

    a.    the grade(s) and type(s) of RAW ASBESTOS FIBER;

    b.    the quantity;

    c.    the date(s) of delivery;

    d.    the location(s), including the address(es), of delivery.

    e.    the name(s) of the agency with which THIS DEFENDANT contracted;

    f.    the date(s) of execution of such contract(s);

    g.    the IDENTITY of the custodian of such contract records of THIS DEFENDANT.

ANSWER:

INTERROGATORY NO. 21:

Did THIS DEFENDANT contract with the General-Services Administration and/or other federal-government agency for the sale, anywhere in the United States, of ASBESTOS-CONTAINING PRODUCT(S) between 1930 and 1980, please state for each such sale:

    a.    the type of product;

    b.    the quantity;

    c.    the date(s) of delivery;

    d.    the location(s), including the address(es) of delivery;

    e.    the name(s) of the agency with which THIS DEFENDANT contracted;

    f.    the date(s) of execution of such contract(s);

    g.    the IDENTITY of the custodian of such contract records of THIS DEFENDANT.

ANSWER:

INTERROGATORY NO. 22:

Does THIS DEFENDANT have any records of the marketing, advertisement, or delivery of its RAW ASBESTOS FIBER and/or ASBESTOS-CONTAINING PRODUCT(S) in or to New England. If so, state:

    a.    the manner in which the records are kept, (e.g., in boxes, files, on microfilm, microfiche or computer tape or disk);

    b.    the location(s) and address(es) where such records are maintained;

    c.    the IDENTITY of the custodian of such records.

ANSWER:

INTERROGATORY NO. 23:

If this defendant has in its possession any records of the marketing, advertisement, or delivery of its RAW ASBESTOS FIBER and/or ASBESTOS-CONTAINING PRODUCTS (including microfilm, microfiche, computer tape or disk, or any other system in which data is

taken from other records), IDENTIFY each such type of record and state whether THIS DEFENDANT has retained the original DOCUMENTS from which the data entered into these modes of storage was obtained. If THIS DEFENDANT has not retained such original DOCUMENTS, state:

a. the date(s) when and location(s) where the original DOCUMENTS were disposed of;

b. the IDENTITY of the custodian of the original DOCUMENTS at the time of their disposal.

ANSWER:

INTERROGATORY NO. 24:

Does THIS DEFENDANT have in its possession any exemplar(s) of advertisements or brochures describing its RAW ASBESTOS FIBER and/or ASBESTOS-CONTAINING PRODUCTS; if so, please state:

a. the location of each exemplar;

b. the year(s) in which said exemplar(s) was utilized;

c. the IDENTITY of the custodian of such exemplars.

ANSWER:

INTERROGATORY NO. 25:

State the following:

a. the address(es) where the corporate records of THIS DEFENDANT (including minutes from the Board of Directors meetings and corporation annual reports), are currently located;

b. the IDENTITY of the custodian of such records.

ANSWER:

INTERROGATORY NO. 26:

Describe the packaging or containers in which THIS DEFENDANT sold and/or distributed RAW ASBESTOS FIBER, including composition, dimension, shape and color.

ANSWER:

INTERROGATORY NO. 27:

Describe any logo, design, marking or printing, including size and color, which appeared on the packaging or containers in which THIS DEFENDANT sold and/or distributed RAW ASBESTOS FIBER.

ANSWER:

INTERROGATORY NO. 28:

Describe the packaging or containers in which THIS DEFENDANT sold and/or distributed each or any ASBESTOS-CONTAINING PRODUCT(S), including composition, dimension, shape and color.

ANSWER:

INTERROGATORY NO. 29:

Describe any logo, design, marking or printing, including size and color, which appeared on the packaging or containers in which THIS DEFENDANT sold and/or distributed each or any ASBESTOS-CONTAINING PRODUCT(S).

ANSWER:

INTERROGATORY NO. 30:

Does THIS DEFENDANT have any exemplars of packaging or containers in which its RAW ASBESTOS FIBER and/or ASBESTOS-CONTAINING PRODUCTS were sold and/or distributed; If so, state:

    a.    the location of each exemplar;

    b.    the year(s) in which said exemplar(s) was utilized;

    c.    the IDENTITY of the custodian of such exemplars.

ANSWER:

INTERROGATORY NO. 31:

Did THIS DEFENDANT put warnings of asbestos-related health hazards on bags of RAW ASBESTOS FIBER; if so, please state:

     a.     the wording of such warning(s), including size, location, and color;

     b.     whether the warning was put on a tag attached to the bags;

     c.     the date such warning(s) was first used;

     d.     whether any change was made in the wording of such warnings, the date(s) of such change, and the reasons for such change.

ANSWER:

INTERROGATORY NO. 32:

Did THIS DEFENDANT put warnings of asbestos-related health hazards on the packaging or containers of ASBESTOS-CONTAINING PRODUCT(S) or on the products themselves? If so, please state:

     a.     the wording of such warnings, including size, location on the packaging or containers and color;

     b.     the date of such warning(s) was first used;

     c.     whether any change was made in the wording of such warnings, the date(s) of such change, and the reasons for such change.

ANSWER:

INTERROGATORY NO. 33:

Has THIS DEFENDANT distributed any brochures or pamphlets that contain warnings of any asbestos-related health hazards; if so, please state:

     a.     the wording of such warnings

     b.     the method used to distribute such brochures or pamphlets;

     c.     the date(s) such brochures or pamphlets were first issued;

    d.      whether THIS DEFENDANT has exemplars of such brochures or pamphlets;

    e.      the IDENTITY of the custodian of such exemplars.

<u>ANSWER</u>:

<u>INTERROGATORY NO. 34</u>:

    Did THIS DEFENDANT warn its employees and/or CONTRACT UNIT(S), anywhere in the United States, that exposure to asbestos could be hazardous to human health. If so, state;

    a.      whether copies of documents containing such warnings exist;

    b.      the IDENTITY of the custodian of such documents.

<u>ANSWER</u>:

<u>INTERROGATORY NO. 35</u>:

    State the IDENTITY of medical directors and/or industrial hygienists employed by THIS DEFENDANT in the United States.

<u>ANSWER</u>:

<u>INTERROGATORY NO. 36</u>:

    Has any employee of THIS DEFENDANT testified by deposition on behalf of THIS DEFENDANT in a third-party case, brought in the United States, wherein the plaintiff has alleged an asbestos-related injury? If so, for each such third party case, please state:

    a.      the caption and case number;

    b.      the court of filing including state and county;

    c.      the date of the deposition;

    d.      the name and address of plaintiff's counsel of record.

<u>ANSWER</u>:

<u>INTERROGATORY NO. 37</u>:

    Has THIS DEFENDANT been a member of the following:

    a.      Asbestos Textile Institute (ATI);

    b.      Industrial Hygiene Foundation and/or Industrial Health Foundation (IHF);

    c.      Mineral Wool Institute;

    d.      Industrial Mineral Insulation Manufacturers Institute;

    e.      Magnesia Silica Insulation Manufacturers Association;

    f.      National Insulation Manufacturers Association (NIMA);

    g.      Thermal Insulation Manufacturers Association (TIMA);

    h.      Asbestos Information Association (AIA);

    i.      Quebec Asbestos Mining Association (QAMA);

    j.      National Safety Council

    k.      Asbestos Cement Producers Association;

    l.      Refractories Institute;

    m.      any other organizations or associations of manufacturers, miners, distributors, importers, labellers, suppliers and/or sellers of ASBESTOS-CONTAINING PRODUCTS;

          i.      please state the name(s) of such organizations or associations.

ANSWER:

INTERROGATORY NO. 38:

For each organization, association or other entity identified in your Response to Interrogatory No. 37, please state:

    a.      the dates during which THIS DEFENDANT was a member;

    b.      the name(s) of any publication(s) received by this defendant from such association or organization;

    c.      the name of such committee or subcommittee of which THIS DEFENDANT was a member, and the dates of such committee or subcommittee membership.

ANSWER:

INTERROGATORY NO. 39:

Has THIS DEFENDANT received any DOCUMENTS containing results or conclusions of any studies and/or tests conducted by the Saranac Laboratory at the Trudeau Foundation relating to the human health consequences of exposure to asbestos? If so, please:

    a.    IDENTIFY all such DOCUMENT(S);

    b.    state the date upon which THIS DEFENDANT first received such DOCUMENT(S):

    c.    the IDENTITY of the custodian of such DOCUMENT(S).

ANSWER:

INTERROGATORY NO. 40:

State whether THIS DEFENDANT has ever maintained a library (or libraries) in the United States which contains books, articles, periodicals, journals, and/or reference materials that relate to the subjects of asbestos, industrial hygiene, medicine, safety, occupational disease and/or engineering. If so, state:

    a.    the date each such library was established;

    b.    the location of each such library;

    c.    the IDENTITY of each librarian or other person in charge of such library.

ANSWER:

INTERROGATORY NO. 41:

Has THIS DEFENDANT exchanged or communicated with any individual or other COMPANY documents containing the results of tests and/or studies of the relationship between the inhalation of asbestos fibers and development of disease(s); if so, please state:

    a.    each individual or COMPANY with whom the information was exchanged or to whom it was communicated;

    b.    the date(s) of any such exchanges or communications;

    c.    the IDENTITY of the custodian of such documents.

ANSWER:

INTERROGATORY NO. 42:

Has any employee of THIS DEFENDANT testified before the Occupational Safety and Health Administration, the National Institute of Occupational Safety and Health, or any committee or subcommittee of the United States Congress on the inhalation of asbestos dust and the development of disease; if so, please state:

     a.    the entity before whom such testimony was given;

     b.    the date(s) and location(s) of such testimony;

     c.    the IDENTITY of the individual(s) who so testified;

     d.    whether any DOCUMENTS were presented to the entity before which testimony was given;

     e.    whether copies of DOCUMENTS presented were retained by THIS DEFENDANT:

          i.    if so, state the IDENTITY of the custodian of such DOCUMENTS.

ANSWER:

INTERROGATORY NO. 43:

At any of the physical facilities identified in the response to Interrogatory No. 15, has THIS DEFENDANT conducted, or caused to be conducted, tests and/or studies of ambient asbestos dust created during the manufacture, processing and/or assembling of ASBESTOS-CONTAINING PRODUCT(S); if so, please state:

     a.    each manufacturing facility, including location and address, at which any such test and/or study was conducted;

     b.    the date of each such test and/or study;

     c.    the individual(s) or entity conducting each such test and/or study;

     d.    whether THIS DEFENDANT has any documents containing the results and/or conclusions of each such study;

e.   the IDENTITY of the custodian of such documents.

ANSWER:

INTERROGATORY NO. 44:

Has THIS DEFENDANT conducted, or caused to be conducted, any tests and/or studies on ambient dust levels at any location or job site where its ASBESTOS-CONTAINING PRODUCTS were utilized in the United States; if so, please state:

a.   the location, including name and address, at which each such test and/or study was conducted;

b.   the individual(s) or entity conducting each such test and/or study;

c.   the date of each such test and/or study;

d.   whether THIS DEFENDANT has any documents containing the results and/or conclusions of each such test and/or study;

e.   the IDENTITY of the custodian of such documents.

ANSWER:

INTERROGATORY NO. 45:

Did THIS DEFENDANT have or utilize any laboratory or other facility anywhere in the United States at which it conducted, or caused to be conducted, any tests and/or studies of its ASBESTOS-CONTAINING PRODUCTS to measure the amount asbestos dust generated by any use for which such products were designed; if so, please state:

a.   the location, including name and address, at which each such test and/or study was conducted;

b.   the individual(s) or entity conducting each such test and/or study;

c.   the date of such test and/or study;

d.   whether THIS DEFENDANT has any documents containing the results and/or conclusions of each such test and/or study;

e.   the IDENTITY of the custodian of such documents.

ANSWER:

The following interrogatories, M46-M54, are to be answered by **MANUFACTURERS** of asbestos or asbestos containing products.

INTERROGATORY NO. M46:

Has THIS DEFENDANT made available to its employees engaged in, anywhere in the United States, the MANUFACTURING of its RAW ASBESTOS FIBER and/or its ASBESTOS-CONTAINING PRODUCT(S), a medical examination program; if so, please state:

    a.    whether chest x-rays or pulmonary function tests were part of such program(s);

    b.    whether participation in any such program was a mandatory condition of employment or was voluntary;

        i.    if mandatory as a condition of employment, how frequently each employee was required to undergo such examination;

    c.    whether THIS DEFENDANT has DOCUMENTS of such programs;

    d.    the IDENTITY of the custodian of such DOCUMENTS.

ANSWER:

INTERROGATORY NO. M47:

Has THIS DEFENDANT notified in writing any individuals or COMPANIES to whom it MANUFACTURED RAW ASBESTOS FIBER and/or ASBESTOS-CONTAINING PRODUCT(S), anywhere in the United States, of the potential relationship between exposure to asbestos and disease; if so, please state:

    a.    the date(s) THIS DEFENDANT provided this information;

    b.    the means used for transmittal of such information;

    c.    whether THIS DEFENDANT has any copies of any DOCUMENTS transmitting such information;

    d.    the IDENTITY of the custodian of such documents.

ANSWER:

INTERROGATORY NO. M48:

Has THIS DEFENDANT required any individual(s) who MANUFACTURED its

ASBESTOS-CONTAINING PRODUCT(S) anywhere in the United States, to wear respirators or

face masks; if so, please state:

    a.    the job title(s), if known, of individual(s) required to wear respirators or face

        masks;

    b.    the date(s) on which THIS DEFENDANT first required the wearing of respirators

        or face masks;

    c.    the means by which the requirement to wear respirators or face masks was

        communicated;

    d.    whether THIS DEFENDANT has any copies of DOCUMENTS communicating

        such requirements;

    e.    the IDENTITY of the custodian of such documents.

ANSWER:

INTERROGATORY NO. M49:

Has THIS DEFENDANT owned or operated any petroleum refining facilities; if so,

please state:

    a.    whether any ASBESTOS-CONTAINING PRODUCTS were MANUFACTURED

        on the premises of such refining facilities;

    b.    the location, including the name and address of all such refining facilities;

    c.    the dates of operation of such refining facilities;

    d.    the types of ASBESTOS-CONTAINING PRODUCTS MANUFACTURED on

        such premises;

    e.    the names of the manufacturers of any ASBESTOS-CONTAINING PRODUCTS

        MANUFACTURED on such premises;

    f.    whether THIS DEFENDANT has documents identifying such MANUFACTURING;

    g.    the IDENTITY of the custodian of such document.

ANSWER:

INTERROGATORY NO. M50:

Has THIS DEFENDANT held any ownership interest in a COMPANY which owned or operated petroleum refining facilities: if so, for the period(s) of time during which THIS DEFENDANT held such interest, please state:

    a.    whether any ASBESTOS-CONTAINING PRODUCTS were MANUFACTURED on the premises of such refining facilities;

    b.    the location, including the name and address of all such refining facilities;

    c.    the dates of operation of such refining facilities;

    d.    the types of ASBESTOS-CONTAINING PRODUCTS MANUFACTURED on such premises;

    e.    the names of the manufacturers of any ASBESTOS-CONTAINING PRODUCTS MANUFACTURED on such premises;

    f.    whether THIS DEFENDANT has DOCUMENTS identifying such MANUFACTURING;

    g.    the IDENTITY of the custodian of such DOCUMENTS.

ANSWER:

INTERROGATORY NO. M51:

Has THIS DEFENDANT contracted with any COMPANY for the MANUFACTURING of ASBESTOS-CONTAINING PRODUCT(S) on any premises owned or leased by THIS DEFENDANT; if so, please state:

    a.    the location, including name and address of such premises;

    b.    the name and address of each such COMPANY;

    c.     the types of ASBESTOS-CONTAINING PRODUCTS;

    d.     the name of the manufacturers of such ASBESTOS-CONTAINING PRODUCTS;

    e.     whether THIS DEFENDANT has DOCUMENTS of such MANUFACTURING;

    f.     the IDENTITY of the custodian of such DOCUMENTS.

ANSWER:

INTERROGATORY NO. M52:

Has THIS DEFENDANT PURCHASED asbestos-containing products for incorporation into its own products, if so, please state:

    a.     the trade, brand name and/or generic name of each type of product;

    b.     the date(s) this DEFENDANT first purchased each type of product;

    c.     the date(s) this DEFENDANT ceased MANUFACTURING each type of product;

    d.     a description of the chemical composition of each type of product, including:

        i.     the type(s) and grade(s) of asbestos fiber contained in each type of product;

        ii.    the quantitative percentage of the types of asbestos fiber in each type of product;

        iii.   any change(s) in the quantitative percentages of the type(s) of asbestos fiber in each type of product;

    e.     the NATURE of each type of product;

    f.     a description of any wording, markings and/or logo on each type of product;

    g.     the recommended use(s) of each type of product, including temperature limits;

    h.     the name of the manufacturer of each type of product;

    i.     the name(s) and address(es) of the supplier(s) of the asbestos fiber used in each type of product;

    j.     the IDENTITY of the person(s) most knowledgeable concerning the purchase of asbestos fiber by THIS DEFENDANT.

ANSWER:

INTERROGATORY NO. M53:

Has THIS DEFENDANT SPECIFIED asbestos-containing products for use with its own products, if so, please state:

    a.    the trade, brand name and/or generic name of each type of product;

    b.    the date(s) this DEFENDANT first purchased each type of product;

    c.    the date(s) this DEFENDANT ceased MANUFACTURING each type of product;

    d.    a description of the chemical composition of each type of product, including:

        i.    the type(s) and grade(s) of asbestos fiber contained in each type of product;

        ii.    the quantitative percentage of the types of asbestos fiber in each type of product;

        iii.    any change(s) in the quantitative percentages of the type(s) of asbestos fiber in each type of product;

    e.    the NATURE of each type of product;

    f.    a description of any wording, markings and/or logo on each type of product;

    g.    the recommended use(s) of each type of product, including temperature limits;

    h.    the name of the manufacturer of each type of product;

    i.    the name(s) and address(es) of the supplier(s) of the asbestos fiber used in each type of product;

    j.    the IDENTITY of the person(s) most knowledgeable concerning the purchase of asbestos fiber by THIS DEFENDANT.

ANSWER:

INTERROGATORY NO. M54:

Has THIS DEFENDANT MANUFACTURED asbestos-containing products into its own products, if so, please state:

a.      the trade, brand name and/or generic name of each type of product;

b.      the date(s) this DEFENDANT first purchased each type of product;

c.      the date(s) this DEFENDANT ceased MANUFACTURING each type of product;

d.      a description of the chemical composition of each type of product, including:

   i.      the type(s) and grade(s) of asbestos fiber contained in each type of product;

   ii.     the quantitative percentage of the types of asbestos fiber in each type of product;

   iii.    any change(s) in the quantitative percentages of the type(s) of asbestos fiber in each type of product;

e.      the NATURE of each type of product;

f.      a description of any wording, markings and/or logo on each type of product;

g.      the recommended use(s) of each type of product, including temperature limits;

h.      the name of the manufacturer of each type of product;

i.      the name(s) and address(es) of the supplier(s) of the asbestos fiber used in each type of product;

j.      the IDENTITY of the person(s) most knowledgeable concerning the purchase of asbestos fiber by THIS DEFENDANT.

ANSWER:

   The following interrogatories, S46-S54, are to be answered by **SELLERS** of asbestos or asbestos containing products.

INTERROGATORY NO. S46:

   Has THIS DEFENDANT made available to its employees engaged in, anywhere in the United States, the SELLING of its RAW ASBESTOS FIBER and/or its ASBESTOS-CONTAINING PRODUCT(S), a medical examination program; if so, please state:

    a.    whether chest x-rays or pulmonary function tests were part of such program(s);

    b.    whether participation in any such program was a mandatory condition of employment or was voluntary;

        i.    if mandatory as a condition of employment, how frequently each employee was required to undergo such examination;

    c.    whether THIS DEFENDANT has DOCUMENTS of such programs;

    d.    the IDENTITY of the custodian of such DOCUMENTS.

ANSWER:

INTERROGATORY NO. S47:

Has THIS DEFENDANT notified in writing any individuals or COMPANIES to whom it SOLD RAW ASBESTOS FIBER and/or ASBESTOS-CONTAINING PRODUCT(S), anywhere in the United States, of the potential relationship between exposure to asbestos and disease; if so, please state:

    a.    the date(s) THIS DEFENDANT provided this information;

    b.    the means used for transmittal of such information;

    c.    whether THIS DEFENDANT has any copies of any DOCUMENTS transmitting such information;

    d.    the IDENTITY of the custodian of such documents.

ANSWER:

INTERROGATORY NO. S48:

Has THIS DEFENDANT required any individual(s) who SOLD its ASBESTOS-CONTAINING PRODUCT(S) anywhere in the United States, to wear respirators or face masks; if so, please state:

    a.    the job title(s), if known, of individual(s) required to wear respirators or face masks;

b.      the date(s) on which THIS DEFENDANT first required the wearing of respirators
or face masks;

c.      the means by which the requirement to wear respirators or face masks was
communicated;

d.      whether THIS DEFENDANT has any copies of DOCUMENTS communicating
such requirements;

e.      the IDENTITY of the custodian of such documents.

ANSWER:

INTERROGATORY NO. S49:

Has THIS DEFENDANT owned or operated any petroleum refining facilities; if so,
please state:

a.      whether any ASBESTOS-CONTAINING PRODUCTS were SOLD on the
premises of such refining facilities;

b.      the location, including the name and address of all such refining facilities;

c.      the dates of operation of such refining facilities;

d.      the types of ASBESTOS-CONTAINING PRODUCTS SOLD on such premises;

e.      the names of the manufacturers of any ASBESTOS-CONTAINING PRODUCTS
SOLD on such premises;

f.      whether THIS DEFENDANT has documents identifying such SELLING;

g.      the IDENTITY of the custodian of such document.

ANSWER:

INTERROGATORY NO. S50:

Has THIS DEFENDANT held any ownership interest in a COMPANY which owned or
operated petroleum refining facilities: if so, for the period(s) of time during which THIS
DEFENDANT held such interest, please state:

a.   whether any ASBESTOS-CONTAINING PRODUCTS were SOLD on the premises of such refining facilities;

b.   the location, including the name and address of all such refining facilities;

c.   the dates of operation of such refining facilities;

d.   the types of ASBESTOS-CONTAINING PRODUCTS SOLD on such premises;

e.   the names of the manufacturers of any ASBESTOS-CONTAINING PRODUCTS SOLD on such premises;

f.   whether THIS DEFENDANT has DOCUMENTS identifying such SELLING;

g.   the IDENTITY of the custodian of such DOCUMENTS.

ANSWER:

INTERROGATORY NO. S51:

Has THIS DEFENDANT contracted with any COMPANY for the SELLING of ASBESTOS-CONTAINING PRODUCT(S) on any premises owned or leased by THIS DEFENDANT; if so, please state:

a.   the location, including name and address of such premises;

b.   the name and address of each such COMPANY;

c.   the types of ASBESTOS-CONTAINING PRODUCTS;

d.   the name of the manufacturers of such ASBESTOS-CONTAINING PRODUCTS;

e.   whether THIS DEFENDANT has DOCUMENTS of such SELLING;

f.   the IDENTITY of the custodian of such DOCUMENTS.

ANSWER:

INTERROGATORY NO. S52:

Has THIS DEFENDANT PURCHASED asbestos-containing products for incorporation into its own products, if so, please state:

a.   the trade, brand name and/or generic name of each type of product;

b.   the date(s) this DEFENDANT first purchased each type of product;

    c.      the date(s) this DEFENDANT ceased SELLING each type of product;

    d.      a description of the chemical composition of each type of product, including:

          i.      the type(s) and grade(s) of asbestos fiber contained in each type of product;

          ii.     the quantitative percentage of the types of asbestos fiber in each type of product;

          iii.    any change(s) in the quantitative percentages of the type(s) of asbestos fiber in each type of product;

    e.      the NATURE of each type of product;

    f.      a description of any wording, markings and/or logo on each type of product;

    g.      the recommended use(s) of each type of product, including temperature limits;

    h.      the name of the manufacturer of each type of product;

    i.      the name(s) and address(es) of the supplier(s) of the asbestos fiber used in each type of product;

    j.      the IDENTITY of the person(s) most knowledgeable concerning the purchase of asbestos fiber by THIS DEFENDANT.

<u>ANSWER:</u>

<u>INTERROGATORY NO. S53:</u>

Has THIS DEFENDANT SPECIFIED asbestos-containing products for use with its own products, if so, please state:

    a.      the trade, brand name and/or generic name of each type of product;

    b.      the date(s) this DEFENDANT first purchased each type of product;

    c.      the date(s) this DEFENDANT ceased SELLING each type of product;

    d.      a description of the chemical composition of each type of product, including:

          i.      the type(s) and grade(s) of asbestos fiber contained in each type of product;

      ii.     the quantitative percentage of the types of asbestos fiber in each type of product;

      iii.    any change(s) in the quantitative percentages of the type(s) of asbestos fiber in each type of product;

e.     the NATURE of each type of product;

f.     a description of any wording, markings and/or logo on each type of product;

g.     the recommended use(s) of each type of product, including temperature limits;

h.     the name of the manufacturer of each type of product;

i.     the name(s) and address(es) of the supplier(s) of the asbestos fiber used in each type of product;

j.     the IDENTITY of the person(s) most knowledgeable concerning the purchase of asbestos fiber by THIS DEFENDANT.

ANSWER:

INTERROGATORY NO. S54:

Has THIS DEFENDANT SOLD asbestos-containing products into its own products, if so, please state:

a.     the trade, brand name and/or generic name of each type of product;

b.     the date(s) this DEFENDANT first purchased each type of product;

c.     the date(s) this DEFENDANT ceased SELLING each type of product;

d.     a description of the chemical composition of each type of product, including:

      i.     the type(s) and grade(s) of asbestos fiber contained in each type of product;

      ii.     the quantitative percentage of the types of asbestos fiber in each type of product;

      iii.    any change(s) in the quantitative percentages of the type(s) of asbestos fiber in each type of product;

    e.     the NATURE of each type of product;

    f.      a description of any wording, markings and/or logo on each type of product;

    g.    the recommended use(s) of each type of product, including temperature limits;

    h.    the name of the manufacturer of each type of product;

    i.      the name(s) and address(es) of the supplier(s) of the asbestos fiber used in each type of product;

    j.      the IDENTITY of the person(s) most knowledgeable concerning the purchase of asbestos fiber by THIS DEFENDANT.

ANSWER:

The following interrogatories, D46-D54, are to be answered by **DISTRIBUTORS** of asbestos or asbestos containing products.

INTERROGATORY NO. D46:

Has THIS DEFENDANT made available to its employees engaged in, anywhere in the United States, the DISTRIBUTING of its RAW ASBESTOS FIBER and/or its ASBESTOS-CONTAINING PRODUCT(S), a medical examination program; if so, please state:

    a.     whether chest x-rays or pulmonary function tests were part of such program(s);

    b.     whether participation in any such program was a mandatory condition of employment or was voluntary;

        i.     if mandatory as a condition of employment, how frequently each employee was required to undergo such examination;

    c.     whether THIS DEFENDANT has DOCUMENTS of such programs;

    d.     the IDENTITY of the custodian of such DOCUMENTS.

ANSWER:

INTERROGATORY NO. D47:

Has THIS DEFENDANT notified in writing any individuals or COMPANIES to whom it DISTRIBUTED RAW ASBESTOS FIBER and/or ASBESTOS-CONTAINING PRODUCT(S),

anywhere in the United States, of the potential relationship between exposure to asbestos and disease; if so, please state:

      a.      the date(s) THIS DEFENDANT provided this information;

      b.      the means used for transmittal of such information;

      c.      whether THIS DEFENDANT has any copies of any DOCUMENTS transmitting such information;

      d.      the IDENTITY of the custodian of such documents.

ANSWER:

INTERROGATORY NO. D48:

Has THIS DEFENDANT required any individual(s) who DISTRIBUTED its ASBESTOS-CONTAINING PRODUCT(S) anywhere in the United States, to wear respirators or face masks; if so, please state:

      a.      the job title(s), if known, of individual(s) required to wear respirators or face masks;

      b.      the date(s) on which THIS DEFENDANT first required the wearing of respirators or face masks;

      c.      the means by which the requirement to wear respirators or face masks was communicated;

      d.      whether THIS DEFENDANT has any copies of DOCUMENTS communicating such requirements;

      e.      the IDENTITY of the custodian of such documents.

ANSWER:

INTERROGATORY NO. D49:

Has THIS DEFENDANT owned or operated any petroleum refining facilities; if so, please state:

   a.   whether any ASBESTOS-CONTAINING PRODUCTS were DISTRIBUTED on

        the premises of such refining facilities;

   b.   the location, including the name and address of all such refining facilities;

   c.   the dates of operation of such refining facilities;

   d.   the types of ASBESTOS-CONTAINING PRODUCTS DISTRIBUTED on such

        premises;

   e.   the names of the manufacturers of any ASBESTOS-CONTAINING PRODUCTS

        DISTRIBUTED on such premises;

   f.   whether THIS DEFENDANT has documents identifying such DISTRIBUTING;

   g.   the IDENTITY of the custodian of such document.

ANSWER:

INTERROGATORY NO. D50:

   Has THIS DEFENDANT held any ownership interest in a COMPANY which owned or

operated petroleum refining facilities:  if so, for the period(s) of time during which THIS

DEFENDANT held such interest, please state:

   a.   whether any ASBESTOS-CONTAINING PRODUCTS were DISTRIBUTED on

        the premises of such refining facilities;

   b.   the location, including the name and address of all such refining facilities;

   c.   the dates of operation of such refining facilities;

   d.   the types of ASBESTOS-CONTAINING PRODUCTS DISTRIBUTED on such

        premises;

   e.   the names of the manufacturers of any ASBESTOS-CONTAINING PRODUCTS

        DISTRIBUTED on such premises;

   f.   whether THIS DEFENDANT has DOCUMENTS identifying such

        DISTRIBUTING;

   g.   the IDENTITY of the custodian of such DOCUMENTS.

ANSWER:

INTERROGATORY NO. D51:

Has THIS DEFENDANT contracted with any COMPANY for the DISTRIBUTING of ASBESTOS-CONTAINING PRODUCT(S) on any premises owned or leased by THIS DEFENDANT; if so, please state:

      a.      the location, including name and address of such premises;

      b.      the name and address of each such COMPANY;

      c.      the types of ASBESTOS-CONTAINING PRODUCTS;

      d.      the name of the manufacturers of such ASBESTOS-CONTAINING PRODUCTS;

      e.      whether THIS DEFENDANT has DOCUMENTS of such DISTRIBUTING;

      f.      the IDENTITY of the custodian of such DOCUMENTS.

ANSWER:

INTERROGATORY NO. D52:

Has THIS DEFENDANT PURCHASED asbestos-containing products for incorporation into its own products, if so, please state:

      a.      the trade, brand name and/or generic name of each type of product;

      b.      the date(s) this DEFENDANT first purchased each type of product;

      c.      the date(s) this DEFENDANT ceased DISTRIBUTING each type of product;

      d.      a description of the chemical composition of each type of product, including:

            i.      the type(s) and grade(s) of asbestos fiber contained in each type of product;

            ii.      the quantitative percentage of the types of asbestos fiber in each type of product;

            iii.      any change(s) in the quantitative percentages of the type(s) of asbestos fiber in each type of product;

      e.      the NATURE of each type of product;

f.   a description of any wording, markings and/or logo on each type of product;

g.   the recommended use(s) of each type of product, including temperature limits;

h.   the name of the manufacturer of each type of product;

i.   the name(s) and address(es) of the supplier(s) of the asbestos fiber used in each type of product;

j.   the IDENTITY of the person(s) most knowledgeable concerning the purchase of asbestos fiber by THIS DEFENDANT.

ANSWER:

INTERROGATORY NO. D53:

Has THIS DEFENDANT SPECIFIED asbestos-containing products for use with its own products, if so, please state:

a.   the trade, brand name and/or generic name of each type of product;

b.   the date(s) this DEFENDANT first purchased each type of product;

c.   the date(s) this DEFENDANT ceased DISTRIBUTING each type of product;

d.   a description of the chemical composition of each type of product, including:

   i.   the type(s) and grade(s) of asbestos fiber contained in each type of product;

   ii.   the quantitative percentage of the types of asbestos fiber in each type of product;

   iii.   any change(s) in the quantitative percentages of the type(s) of asbestos fiber in each type of product;

e.   the NATURE of each type of product;

f.   a description of any wording, markings and/or logo on each type of product;

g.   the recommended use(s) of each type of product, including temperature limits;

h.   the name of the manufacturer of each type of product;

    i.     - the name(s) and address(es) of the supplier(s) of the asbestos fiber used in each type of product;

    j.     the IDENTITY of the person(s) most knowledgeable concerning the purchase of asbestos fiber by THIS DEFENDANT.

ANSWER:

INTERROGATORY NO. D54:

Has THIS DEFENDANT DISTRIBUTED asbestos-containing products into its own products, if so, please state:

    a.     the trade, brand name and/or generic name of each type of product;

    b.     the date(s) this DEFENDANT first purchased each type of product;

    c.     the date(s) this DEFENDANT ceased DISTRIBUTING each type of product;

    d.     a description of the chemical composition of each type of product, including:

        i.     the type(s) and grade(s) of asbestos fiber contained in each type of product;

        ii.     the quantitative percentage of the types of asbestos fiber in each type of product;

        iii.     any change(s) in the quantitative percentages of the type(s) of asbestos fiber in each type of product;

    e.     the NATURE of each type of product;

    f.     a description of any wording, markings and/or logo on each type of product;

    g.     the recommended use(s) of each type of product, including temperature limits;

    h.     the name of the manufacturer of each type of product;

    i.     the name(s) and address(es) of the supplier(s) of the asbestos fiber used in each type of product;

    j.     the IDENTITY of the person(s) most knowledgeable concerning the purchase of asbestos fiber by THIS DEFENDANT.

ANSWER:

The following interrogatories, B46-B54, are to be answered by **BROKERS** of asbestos or asbestos containing products.

INTERROGATORY NO. B46:

Has THIS DEFENDANT made available to its employees engaged in, anywhere in the United States, the BROKERING of its RAW ASBESTOS FIBER and/or its ASBESTOS-CONTAINING PRODUCT(S), a medical examination program; if so, please state:

      a.     whether chest x-rays or pulmonary function tests were part of such program(s);

      b.     whether participation in any such program was a mandatory condition of employment or was voluntary;

              i.     if mandatory as a condition of employment, how frequently each employee was required to undergo such examination;

      c.     whether THIS DEFENDANT has DOCUMENTS of such programs;

      d.     the IDENTITY of the custodian of such     DOCUMENTS.

ANSWER:

INTERROGATORY NO. B47:

Has THIS DEFENDANT notified in writing any individuals or COMPANIES to whom it BROKERED RAW ASBESTOS FIBER and/or ASBESTOS-CONTAINING PRODUCT(S), anywhere in the United States, of the potential relationship between exposure to asbestos and disease; if so, please state:

      a.     the date(s) THIS DEFENDANT provided this information;

      b.     the means used for transmittal of such information;

      c.     whether THIS DEFENDANT has any copies of any DOCUMENTS transmitting such information;

      d.     the IDENTITY of the custodian of such documents.

ANSWER:

INTERROGATORY NO. B48:

Has THIS DEFENDANT required any individual(s) who BROKERED its ASBESTOS-CONTAINING PRODUCT(S) anywhere in the United States, to wear respirators or face masks; if so, please state:

     a.    the job title(s), if known, of individual(s) required to wear respirators or face masks;

     b.    the date(s) on which THIS DEFENDANT first required the wearing of respirators or face masks;

     c.    the means by which the requirement to wear respirators or face masks was communicated;

     d.    whether THIS DEFENDANT has any copies of DOCUMENTS communicating such requirements;

     e.    the IDENTITY of the custodian of such documents.

ANSWER:

INTERROGATORY NO. B49:

Has THIS DEFENDANT owned or operated any petroleum refining facilities; if so, please state:

     a.    whether any ASBESTOS-CONTAINING PRODUCTS were BROKERED on the premises of such refining facilities;

     b.    the location, including the name and address of all such refining facilities;

     c.    the dates of operation of such refining facilities;

     d.    the types of ASBESTOS-CONTAINING PRODUCTS BROKERED on such premises;

     e.    the names of the manufacturers of any ASBESTOS-CONTAINING PRODUCTS BROKERED on such premises;

     f.    whether THIS DEFENDANT has documents identifying such BROKERING;

g.     the IDENTITY of the custodian of such document.

ANSWER:

INTERROGATORY NO. B50:

Has THIS DEFENDANT held any ownership interest in a COMPANY which owned or operated petroleum refining facilities: if so, for the period(s) of time during which THIS DEFENDANT held such interest, please state:

a.     whether any ASBESTOS-CONTAINING PRODUCTS were BROKERED on the premises of such refining facilities;

b.     the location, including the name and address of all such refining facilities;

c.     the dates of operation of such refining facilities;

d.     the types of ASBESTOS-CONTAINING PRODUCTS BROKERED on such premises;

e.     the names of the manufacturers of any ASBESTOS-CONTAINING PRODUCTS BROKERED on such premises;

f.     whether THIS DEFENDANT has DOCUMENTS identifying such BROKERING;

g.     the IDENTITY of the custodian of such DOCUMENTS.

ANSWER:

INTERROGATORY NO. B51:

Has THIS DEFENDANT contracted with any COMPANY for the BROKERING of ASBESTOS-CONTAINING PRODUCT(S) on any premises owned or leased by THIS DEFENDANT; if so, please state:

a.     the location, including name and address of such premises;

b.     the name and address of each such COMPANY;

c.     the types of ASBESTOS-CONTAINING PRODUCTS;

d.     the name of the manufacturers of such ASBESTOS-CONTAINING PRODUCTS;

e.     whether THIS DEFENDANT has DOCUMENTS of such BROKERING;

f.      the IDENTITY of the custodian of such DOCUMENTS.

ANSWER:

INTERROGATORY NO. B52:

Has THIS DEFENDANT BROKERED asbestos-containing products for incorporation into its own products, if so, please state:

    a.      the trade, brand-name and/or generic name of each type of product;

    b.      the date(s) this DEFENDANT first BROKERED each type of product;

    c.      the date(s) this DEFENDANT ceased BROKERING each type of product;

    d.      a description of the chemical composition of each type of product, including:

        i.      the type(s) and grade(s) of asbestos fiber contained in each type of product;

        ii.     the quantitative percentage of the types of asbestos fiber in each type of product;

        iii.    any change(s) in the quantitative percentages of the type(s) of asbestos fiber in each type of product;

    e.      the NATURE of each type of product;

    f.      a description of any wording, markings and/or logo on each type of product;

    g.      the recommended use(s) of each type of product, including temperature limits;

    h.      the name of the manufacturer of each type of product;

    i.      the name(s) and address(es) of the supplier(s) of the asbestos fiber used in each type of product;

    j.      the IDENTITY of the person(s) most knowledgeable concerning the purchase of asbestos fiber by THIS DEFENDANT.

ANSWER:

INTERROGATORY NO. B53:

Has THIS DEFENDANT SPECIFIED asbestos-containing products for use with its own products, if so, please state:

    a.    the trade, brand name and/or generic name of each type of product;

    b.    the date(s) this DEFENDANT first purchased each type of product;

    c.    the date(s) this DEFENDANT ceased BROKERING each type of product;

    d.    a description of the chemical composition of each type of product, including:

        i.    the type(s) and grade(s) of asbestos fiber contained in each type of product;

        ii.    the quantitative percentage of the types of asbestos fiber in each type of product;

        iii.    any change(s) in the quantitative percentages of the type(s) of asbestos fiber in each type of product;

    e.    the NATURE of each type of product;

    f.    a description of any wording, markings and/or logo on each type of product;

    g.    the recommended use(s) of each type of product, including temperature limits;

    h.    the name of the manufacturer of each type of product;

    i.    the name(s) and address(es) of the supplier(s) of the asbestos fiber used in each type of product;

    j.    the IDENTITY of the person(s) most knowledgeable concerning the purchase of asbestos fiber by THIS DEFENDANT.

ANSWER:

INTERROGATORY NO. B54:

Has THIS DEFENDANT BROKERED asbestos-containing products into its own products, if so, please state:

    a.    the trade, brand name and/or generic name of each type of product;

    b.    the date(s) this DEFENDANT first purchased each type of product;

    c.    the date(s) this DEFENDANT ceased BROKERING each type of product;

    d.    a description of the chemical composition of each type of product, including:

        i.    the type(s) and grade(s) of asbestos fiber contained in each type of product;

        ii.    the quantitative percentage of the types of asbestos fiber in each type of product;

        iii.    any change(s) in the quantitative percentages of the type(s) of asbestos fiber in each type of product;

    e.    the NATURE of each type of product;

    f.    a description of any wording, markings and/or logo on each type of product;

    g.    the recommended use(s) of each type of product, including temperature limits;

    h.    the name of the manufacturer of each type of product;

    i.    the name(s) and address(es) of the supplier(s) of the asbestos fiber used in each type of product;

    j.    the IDENTITY of the person(s) most knowledgeable concerning the purchase of asbestos fiber by THIS DEFENDANT.

ANSWER:

INTERROGATORY NO. 55:

    Does or did THIS DEFENDANT utilize or employ any CONTRACT UNIT. If so, please state:

    a.    the inclusive periods of time the CONTRACT UNIT(S) was utilized or employed;

    b.    the business address and name of the CONTRACT UNIT(S);

    c.    whether THIS DEFENDANT has any DOCUMENTS showing the location(s) of the job site(s) where the CONTRACT UNIT(S) worked, and if so, state the IDENTITY of the custodian of such DOCUMENTS.

ANSWER:

INTERROGATORY NO. 56:

Has THIS DEFENDANT received any written communication or other DOCUMENT, other than a claim for workers' compensation, that any person was claiming injury as a result of exposure to its RAW ASBESTOS FIBER and/or ASBESTOS-CONTAINING PRODUCT(S); if so, please IDENTIFY the first such written communication or DOCUMENT.

ANSWER:

INTERROGATORY NO. 57:

Has any person filed a claim for asbestos-related injury regarding THIS DEFENDANT against any workers' compensation insurance carrier which provided coverage for THIS DEFENDANT; if so, please state:

      a.     the date of such claim;

      b.     the name of claimant;

      c.     the caption;

      d.     the case number;

      e.     the court in which the claim was filed;

      f.     the IDENTITY of the custodian of such documents.

ANSWER:

INTERROGATORY NO. 58:

Has any person filed a workers' compensation claim for asbestos-related injury against THIS DEFENDANT; if so, please state:

      a.     the date of such claim;

      b.     the name of claimant;

      c.     the caption;

      d.     the case number;

      e.     the court in which the claim was filed;

f.     the IDENTITY of the custodian of such document.

ANSWER:

INTERROGATORY NO. 59:

Does THIS DEFENDANT have insurance available to cover judgment(s) entered against it in asbestos-related personal injury lawsuits; if so, please state:

a.     the name and principal place of business of any insurance carrier who has issued such policy of insurance;

b.     the number and effective date of each policy;

c.     the amount(s) of coverage of each policy;

d.     the applicable dates of coverage;

e.     any reservation of rights contained in each such policy;

f.     the amount of coverage presently exhausted under each such policy;

g.     the amount of coverage presently available under each such policy;

h.     whether limits contained in each such policy include costs of defense.

ANSWER:

INTERROGATORY NO. 60:

DID THIS DEFENDANT UTILIZE A DISTRIBUTOR IN THE SALE, STORAGE, and/or SHIPMENT of its asbestos containing products to New England between 1930 and 1980; if so, state for each such distributor:

a.     the name of the distributor;

b.     the location of the distributor;

c.     the dates and duration of any distributor arrangement with this defendant;

d.     the dates of execution of any distributor contracts; and

e.     the identity of the custodian of any distributor contracts.

ANSWER:

INTERROGATORY NO. 61:

Identify each person whom you consulted in preparing these answers to interrogatories, and state:

a.      the particular interrogatories and subject matter to which each person contributed.

ANSWER:

INTERROGATORY NO. 62:

Identify each individual presently employed by this defendant who was employed by this defendant or any other manufacturer of asbestos containing products between 1940 and 1975, whose job duties included manufacturing, marketing, distribution, delivery, or testing of asbestos-containing products.

ANSWER:

INTERROGATORY NO. 63:

Identify each retiree of this defendant who was employed by this defendant or any other manufacturer of asbestos containing products between 1940 and 1975, whose job duties included manufacturing, marketing, distribution, delivery, or testing of asbestos-containing products.

ANSWER:


DATED:

                                        Respectfully submitted,
                                        PLAINTIFFS,
                                        By their attorney,

                                        s/David J. McMorris, Esq.
                                        David J. McMorris, Esq.
                                        BBO# 338970
                                        THORNTON & NAUMES LLP
                                        100 Summer St., 30th Fl.
                                        Boston, MA  02110
                                        (617) 720-1333  FAX (617) 720-2445